421 A.2d 831

**William W. H. BERG, Jr.**

v.

**CONSOLIDATED FREIGHTWAYS, INC., a corporation, Paul
M. Ray, an individual and Dennis Casarcia, an individual.**

**Appeal of CONSOLIDATED FREIGHTWAYS, INC. and
Paul M. Ray.**

Superior Court of Pennsylvania.

Argued Nov. 13, 1979.

Filed Sept. 12, 1980.

Petition for Allowance of Appeal Denied Jan. 8, 1981.

496

Norman J. Cowie, Pittsburgh, for Consolidated Freight-ways and Paul M. Ray, appellants.

Stanley M. Stein, Pittsburgh, for appellee.

Before PRICE, HESTER and CAVANAUGH, JJ.

HESTER, Judge:

This is an appeal from an Order of the Court of Common Pleas of Allegheny County denying appellant's motions for a new trial and for judgment N.O.V.

Appellee initiated this action in trespass for slander on December 17, 1974. Named as defendants were two individuals (only one of whom is an appellant) and a corporation.

The circumstances underlying the suit are as follows: In March of 1974 appellee was hired by appellant Freightways, Inc. as a night dock foreman. His duties included the supervision of the loading and unloading of trucks at Freightways' Harmarville Terminal. Under his supervision were approximately 13 workmen. His immediate supervisor was senior foreman Tom Placenik. Appellee spent about one–fourth of his work time supervising actual yard work and the remainder in the office, doing paperwork.

Early on the morning of September 27, 1974, while appellee was in the office, a driver, Frank Mann, came in and stated that the terminal had been "ripped off". Appellee immediately went to the dock and then out to the yard but found nothing unusual. Appellee then called the F.B.I., however he did not inform either Paul Ray, the terminal manager, or Dennis Casarcia, the night manager.

Within a week investigators solved the case and it was revealed that Tom Placenik and several other employees were involved in a conspiracy to steal goods from the terminal. Placenik and the others were found guilty and sentenced. It was also brought out that concealment of these illicit activities was accomplished by assigning appellee to the office during the times the thefts were carried out. Placenik testified that he specifically assigned appellee to the office to keep him out of the way.

Just prior to the arrests of the thieves, appellee was called to an office by investigators and appellant Ray. They questioned appellee about the thefts and he denied any involvement (which subsequently proved to be the case). However, he was presented with the option of resigning or

being discharged. He resigned, and at the same time, those involved in the thefts were discharged.

Testimony from other workers in the plant indicated that appellant Ray had told them that appellee was discharged because of the thefts and his silence in the face of knowledge of them.

Donald Mulligan, an employee of Freightways, testified that appellant Ray told the men of appellee's termination:

"We were told to tell the public or the 249 men, the union men, that he was relieved of his duties and he was fired for not being able to handle his job correctly. And in confidence, I was told that because he was on that shift, he was guilty simply by being on that shift, of conspiracy." (N.T. pgs. 118–19).

Subsequent to termination, appellee sought other employment. He consulted an employment counselor, Roger Sulkowski. Sulkowski told him that he would have to clear his name before he could help him in the trucking industry. Testimony indicated Sulkowski had been told that appellee had been involved in stealing at Freightways.

Following a trial by jury, a verdict for appellee was returned in the amount of $40,600.00 against appellants Ray and Freightways, Inc. After a denial of the aforementioned motions, they appealed.

Appellants assert that their conduct under the circumstances of this case was not such as to be actionable for slander and that they were entitled to a compulsory non-suit or judgment N.O.V.

Appellee's cause of action below was founded not only on the verbal communication of appellants' but the fact that he was fired in the midst of a criminal investigation at his place of work.

We are called upon to decide whether this is a valid basis upon which to ground a suit for slander.

In *Geary v. United States Steel Corporation*, 456 Pa. 171, 319 A.2d 174 (1974) it was held that in absence of a contract, an employer had a right to terminate the employment

relationship at will. However, along with this principle, the court also stated that this right is not *absolute*, that in some cases the discharge of an employee may infringe on areas where some recognized facet of public policy is threatened.

"The notion that substantive due process elevates in employers the privilege of hiring and firing his employees to an absolute constitutional right, has long since been discredited." Id. at A.2d 180.

The lower court relied on *Bennett v. Norban*, 396 Pa. 94, 151 A.2d 476 (1959) wherein the Supreme Court held that mere conduct may constitute slander. The court held that the entire circumstances of the situation here were sufficient to allow the case to go to the jury.

 We agree. The cases cited in appellant's brief are inapposite to our situation. An action for defamation is based on a violation of the fundamental right of an individual to enjoy a reputation unimpaired by false and defamatory attacks. The gist of such an action is injury to the plaintiff's reputation. Generally, in order to constitute defamation, the matter complained of must be false, be published, and be demonstrably about the person claiming to have been defamed. See 50 Am.Jur.2nd, Libel and Slander, § 1 et seq.

 The facts show that appellee was forced to resign amidst an investigation for theft, along with the actual thieves, and there was also evidence adduced which showed communications from appellants reflecting on appellee's character and reputation, which were proved to be untrue, and which were shown to be communicated to third persons.

While such an action as this apparently has not been pursued in Pennsylvania prior to this time, other jurisdictions have permitted them and permitted the injured party to recover. See generally, 50 Am.Jur.2nd, Libel and Slander, § 116 et seq.

Pennsylvania has always permitted a person to protect his good name and reputation, *Barr v. Moore*, 87 Pa. 385 (1878).

Certainly here, testimony indicated that appellee's reputation was injured. Whether it was as a result of the appellants actions, we believe was a question for the jury.

Clearly the normal foreseeable harm to an employee that goes with any job termination was exceeded, see, *Geary,* supra.

Thus we believe the court properly permitted this issue to be submitted to the jury.[1]

Appellants also assert that even if an actionable slander could be inferred from appellee's termination, they were entitled to invoke the defense of qualified privilege.

■ The basis of the "privilege defense" in defamation actions is public policy. Conduct otherwise actionable will escape liability due to the fact that the defendant is *acting* in furtherance of some interest of social importance, which is entitled to protection even at the expense of uncompensated harm to the plaintiff's reputation. *Corabi v. Curtis Publishing Company,* 441 Pa. 432, 451, 273 A.2d 899, 909 (1971). Depending upon the importance of defendants actions to society, the privilege may be absolute or qualified.

■ However, if the privilege is "qualified", and it is shown that a defendant was actuated by malice, the defense is no longer available. *Corabi,* 441 Pa. at 452, 273 A.2d at 909.

■ The courts charge as to privilege, we find to be satisfactory (see Notes of Testimony pages 343–348). The judge stated that appellants had a "qualified privilege and that if the jury believed that statements were made with regard to appellee that were false and in reckless disregard as to whether they were false, then no privilege was available, but the burden was on appellee to show that "malice" was present." We believe this was in accord with *Corabi,* supra. See also, 2 Feldman, Pa. Trial Guide § 28.29.

---

1. Some confusion may exist as to precisely what communication constituted the slander—the verbal or non verbal. We think it enough to say that under the entire factual circumstances, including both verbal and non verbal communication, sufficient proof was adduced to support the action filed below. Whether mere conduct alone, in absence of any verbal communication, would support a suit in slander is a question better left to a case involving precisely those facts. Suffice to say that in view of our holding, it would be difficult to argue against it.

■ Appellant next contends that the burden of proof as imposed by the court, violated the constitutional mandates of *Gertz v. Welch*, 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974).

Appellants contend that the court improperly imposed a burden on them to prove the truth of the defamatory comments and failed to impose a burden on appellee to prove the falsity of such communications.

Appellant concedes that this was not the law as so enunciated by *Corabi v. Curtis Publishing Company*, supra, but asserts that *Gertz v. Welch*, supra, imposed a constitutional standard which we must obey.

In *Gertz*, the Supreme Court essentially tried to balance the competing interests of a free press with the individual rights as to reputation. They recognized that to avoid press self–censorship we must immunize some falsehoods to protect speech "that matters."

We see nothing in *Gertz* which prohibits the holding of *Corabi* as it relates to this case. *Gertz* involved a media–defendant, here we are involved with private party defendants. The recognized right of a private individual to his reputation was expressly noted in *Gertz* and raised to a higher level than that of public figures:

> "Thus, private individuals are not only more vulnerable to injury than public officials, they are more deserving of recovery. For these reasons we conclude that the states should retain substantial latitude in their efforts to enforce a legal remedy for defamatory falsehood injuries to the reputation of a private individual." Id. at U.S. 345, 346, 94 S.Ct. 3010.

Clearly, *Gertz* must be limited to a situation where a media defendant is involved. Since none is involved here, we believe the preexisting standard in Pennsylvania for slander was not abrogated by *Gertz*. Hence it was in full force and correctly applied by the court.

In addition, appellee here clearly demonstrated the falsity of the communication by his own testimony and the testimo-

ny of one of the convicted thieves. Appellant made no attempt at proving the truth as to any communication (realizing, perhaps, the hopelessness of it). Thus we dismiss this contention.

■ Appellants also assert that there was insufficient evidence to support the jury's award of damages. Appellants again assert that the mandate of *Gertz* was not complied with.

Appellants essentially dispute that portion of the court's charge wherein the judge stated that in order to recover one need not show special harm.

*Gertz*, limited recoveries to "actual injury", supported by "competent evidence, although there need be no evidence which assigns an actual dollar value to the injury." Id. at U.S. 350, 94 S.Ct. 3012.

The evidence indicated that appellee lost approximately ten months wages following his discharge, plus another year due to appellants conduct. Also, evidence was produced showing appellee's anxiety, humiliation, and damage to his reputation. We believe the award of $40,600.00 was not out of line with the circumstances in this case. If the jury believed that which was presented, we cannot interfere with their award as long as some evidence was presented.

Thus, we disagree with appellants that the award of damages was improper.

■ Finally, appellant contends that the issue of punitive damages was improperly presented to the jury. In the verdict, however, no punitive damages were awarded. Appellants seem to think that even though none were awarded, the jury inflated the other award to compensate for it. We find no reasonable basis for this conclusion. The verdict was not so large as to make one wonder how the jury arrived at it. In all respects we find the award regular and will affirm.