William J. KROCHALIS and Debra
Y. Krochalis

v.

INSURANCE COMPANY OF NORTH
AMERICA, et al.

Civ. A. No. 83–491.

United States District Court,
E.D. Pennsylvania.

Dec. 19, 1985.

Gregory S. Rubin, Paoli, Pa., for plaintiffs.

Francis M. Milone, Morgan, Lewis & Bockius, Philadelphia, Pa., for defendants.

## MEMORANDUM OPINION AND ORDER

VANARTSDALEN, District Judge.

After extensive discovery, defendants have moved for summary judgment in this case which involves a dispute arising from the events that took place during and immediately following the termination of the employment relationship between plaintiff William J. Krochalis and defendant Insurance Company of North America (INA). Plaintiffs' complaint seeks relief on twelve counts: counts one through three for defamation of William Krochalis; count four for assault; count five for false imprisonment; count six for invasion of privacy;

count seven for intentional infliction of emotional distress; count eight for negligent infliction of emotional distress; count nine for breach of contract; count ten seeks punitive damages (presumedly on the basis of the liability contended in the preceding counts); count eleven for defamation of Debra Krochalis; and count twelve for Debra Krochalis' loss of her husband's consortium. Defendants have moved for summary judgment on all counts.

Plaintiff William J. Krochalis worked for defendant INA from January 1979 until February 1982. He was hired originally as Manager of Market Research and was promoted eventually to Director of Market Development. In 1981, INA's Corporate Audit Department conducted an audit of the operations of the Marketing Department including the expense accounts of the employees in the Market Development Department, which was then headed by Krochalis. The audit revealed several irregularities in Krochalis' expense reports, and, on February 1, 1982, Krochalis' supervisor, James E. Malling, gave Krochalis the choice of resigning or being terminated. Krochalis resigned and informed the INA employees in his department of his decision to resign on February 1, 1982. Later that day, after he left the office, Krochalis apparently changed his mind about resigning and dictated two memoranda to his secretary over the telephone. One memorandum, addressed to Malling, stated that Krochalis was not resigning, despite his statements of that morning. The other memorandum, addressed to the employees in his department, stated that Krochalis' subordinates should disregard his earlier statements concerning his resignation, and that business would proceed as usual.

The next morning, February 2, 1982, Krochalis came to work. Pat Hasson, Director of Personnel, requested that Krochalis come to see him in the Personnel Office. Under Hasson's threat either to have security guards come and bring Krochalis to the Personnel Office or to have security guards remove Krochalis from the premises, Krochalis agreed to go to the Personnel Office to meet with Hasson. Hasson told him that his employment was terminated and instructed him to leave the premises. Krochalis left the building after this meeting with Hasson.

Later that day, February 2, 1982, Malling conducted a meeting with the employees of the Market Development Department. Krochalis claims that Malling's comments at that meeting regarding Krochalis' resignation and regarding the audit of the Marketing Department contain defamatory innuendo. Malling's comments at that meeting form the basis for Krochalis' slander and defamation claims. The facts relevant to each claim are discussed in greater detail in considering defendants' motion for judgment on each claim.

In deciding a motion for summary judgment, the court must determine whether the moving party has carried its burden of showing that there are no genuine issues of material fact. *See Hollinger v. Wagner Mining Equipment Co.*, 667 F.2d 402, 405 (3d Cir.1981). All reasonable inferences from the evidentiary material of record must be drawn in favor of the nonmoving party. *Small v. Seldows Stationery*, 617 F.2d 992, 994 (3d Cir.1980). A response to a properly supported summary judgment motion may not rest upon the allegations of the pleadings but must present, by affidavit or otherwise, specific facts sufficient to create a genuine issue of material fact. Fed.R.Civ.P. 56(e); *Sunshine Books, Ltd. v. Temple University*, 697 F.2d 90, 96 (3d Cir.1982).

Plaintiff William J. Krochalis submitted an affidavit in opposition to defendants' summary judgment motion. Defendants have moved to strike paragraphs 11, 13–22, 34 and 35 of Krochalis' affidavit on grounds that those portions of the affidavit are not made on personal knowledge or do not set forth facts that would be admissible in evidence. Fed.R.Civ.P. 56(e). To a great extent, defendants' objections are well-founded, and I will disregard certain portions of Krochalis' affidavit in ruling on defendants' summary judgment motion.

In paragraph 11 of his affidavit, Krochalis clearly relates hearsay as to what Mr. Hasson told his secretary. The substance of Krochalis' hearsay testimony is covered in the deposition of his secretary and her version, not Mr. Krochalis' is appropriate for the court to consider. To the extent Krochalis' version may have been offered for a purpose other than proving the truth of the words stated, his version has been considered.

In paragraphs 13 to 22, Krochalis sets forth the events and statements during and following the February 2, 1982 meeting that Malling held with the employees in Krochalis' department. Although this portion of Mr. Krochalis' affidavit is helpful to the court as a summary of the evidence of record, Mr. Krochalis' reading of other witnesses' depositions is not evidence. Much of this material would more appropriately be part of plaintiffs' brief than part of an affidavit. The material is covered in the depositions, and Mr. Krochalis' recounting of the evidence in depositions and exhibits will not independently be considered as evidence.

Finally, defendants object to Mr. Krochalis' statements in paragraph 34 as to what he "learned" about the auditors' investigation of his expense accounts and in paragraph 35 as to Krochalis' belief concerning the reasons for his termination. Defendants claim that these statements are not based on Mr. Krochalis' personal knowledge. Although Krochalis has not established by affidavit the basis for his personal knowledge on these matters, I cannot conclude on this record that he had no personal knowledge of these matters. I will consider all of paragraphs 34 and 35 of Mr. Krochalis' affidavit.

## I. *The Defamation Counts*

In Count I plaintiff, William Krochalis, seeks to recover from defendants for slander allegedly arising from the comments Malling made to the employees in INA's Marketing Department on February 2, 1982. Malling stated that Krochalis had resigned, that the matter was between Krochalis and the company, and that he would not comment further on the resignation. Toward the end of the meeting, Malling commented on the audit of the Marketing Department. Krochalis contends that the following statements were made by Malling and that they were false and defamatory to Krochalis:

> (1) "Any reoccurrence of fraudulent activities or misuse of company funds for personal gain will result in immediate termination."
>
> (2) "Both the person and the approving manager will be terminated for fraudulent expense vouchers."
>
> (3) "I don't know what kind of culture existed here before, but these actions ... will not be tolerated any longer."
>
> (4) "There will be no general amnesty. If you want to confess I will listen."

Plaintiffs' Memorandum at 12; *see also* Complaint ¶ 10. Krochalis contends that those statements were slanderous and that they conveyed to the audience the meaning that he "had committed criminal acts of theft, misuse, embezzlement, and/or fraudulent conversion of company monies." Complaint ¶ 11.

Defendants contend that they are entitled to summary judgment on Krochalis' slander claims because Malling's remarks were true, were protected by a qualified privilege and were not uttered negligently, recklessly or with malice.[1] In this slander action, Pennsylvania common and statutory law applies as modified by federal constitutional principles of free speech embodied in the first amendment. *See Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974); *Rutt v. Bethlehems' Globe Publishing*, 335 Pa. Super. 163, 484 A.2d 72 (Pa.Super.1984).

Pennsylvania has established by statute the burdens of proof for the parties to a defamation action with respect to the major

---

1. Defendants do not concede that Malling's remarks were capable of a defamatory meaning or that they were understood to refer to Krochalis. Defendants determined, however, not to raise these issues in their summary judgment motion. The record does not establish that defendants are entitled to summary judgment on either of those grounds.

elements of the cause of action and the state-law defenses.

(a) Burden of Plaintiff.—In an action for defamation, the plaintiff has the burden of proving, when the issue is properly raised:

(1) The defamatory character of the communication.

(2) Its publication by the defendant.

(3) Its application to the plaintiff.

(4) The understanding by the recipient of its defamatory meaning.

(5) The understanding by the recipient of it as intended to be applied to the plaintiff.

(6) Special harm resulting to the plaintiff from its publication.

(7) Abuse of a conditionally privileged occasion.

(b) Burden of defendant.—In an action for defamation, the defendant has the burden of proving, when the issue is properly raised:

(1) The truth of the defamatory communication.

(2) The privileged character of the occasion on which it was published.

(3) The character of the subject matter of defamatory comment as of public concern.

42 Pa.Cons.Stat.Ann. § 8343.[2]

### A. *Truth of the Communication*

There is a great deal of uncertainty in the law of Pennsylvania regarding the truth of a defamatory communication. The Pennsylvania Supreme Court recently held that the Pennsylvania statute imposing the burden of proving truth upon the defendant was not unconstitutional, at least with respect to the imposition of liability for compensatory damages in a private-figure defamation action. *Hepps v. Philadelphia Newspapers, Inc.*, 506 Pa. 304, 485 A.2d 374 (1984). The United States Supreme Court has noted probable jurisdiction to review that decision. *Philadelphia Newspapers, Inc. v. Hepps*, — U.S. —, 105 S.Ct. 3496, 87 L.Ed.2d 628 (1985). At issue in that appeal before the United States Supreme Court is not only the constitutionality of the Pennsylvania statute, but also the questions whether a private-figure defamation plaintiff may recover damages from a media defendant without proving falsity and whether falsity may be presumed solely from the defamatory character of the words. *See Philadelphia Newspapers, Inc. v. Hepps*, 53 U.S.L.W. 3747 (March 14, 1985) (summary of appeal).

■■■■ Under Pennsylvania law, "falsity of the defamatory words is presumed, [but] proof of the truth of the words by the defendant is a complete and absolute defense to a civil action for libel." *Hepps*, 485 A.2d at 379. *Compare Corabi*, 441 Pa. at 449, 273 A.2d at 908 (falsity is not an element of a libel action, but truth is a

---

**2.** Section 8343 is a reenactment of the Act of August 21, 1953, P.L. 1291, § 1, 12 P.S. § 1584a, which was a verbatim enactment of § 613 of the first *Restatement of Torts*. *See Corabi v. Curtis Publishing Co.*, 441 Pa. 432, 449–50 nn. 5 & 6, 273 A.2d 899 (1971). In contrast to the first *Restatement of Torts* and the Pennsylvania statute, the *Restatement (Second) of Torts* does not provide that defendants have the burden of proving truth. The reason for this change in the *Restatement* is the uncertain constitutionality of placing the burden of proving truth upon the defendant. *See Restatement (Second) of Torts* § 613 comment j. The American Law Institute refused to express an opinion as to whether requiring the defendant to prove truth is constitutional. *See id.* Caveat. The Pennsylvania Supreme Court has determined that placing the burden of proving truth on the defendant in a private-figure defamation suit is consti-

tutional. *Hepps v. Philadelphia Newspapers, Inc.*, 506 Pa. 304, 485 A.2d 374 (1984). The United States Supreme Court has noted probable jurisdiction to review that decision. *Philadelphia Newspapers, Inc. v. Hepps*, — U.S. —, 105 S.Ct. 3496, 87 L.Ed.2d 628 (1985); *see also* 53 U.S.L.W. 3747 (summary of appeal).

I need not determine, at this point in the proceeding, whether plaintiffs or defendants bear the burden of proving the falsity or truth of the allegedly defamatory communication. The evidence of record is sufficient for a jury to find that the communication was true and sufficient for a finding of falsity as well. There is a material issue of fact as to the truth or falsity of the communication, and defendants' summary judgment motion must therefore be denied, regardless of who bears the burden of proving truth or falsity.

defense), *with Hepps*, 485 A.2d at 379 & n. 2 (falsity is an element of the action, which is presumed in the absence of proof to the contrary). Truth is typically an issue resolved by the jury in a defamation action. *See Restatement (Second) of Torts* § 617(b). In this case, there are substantial issues of fact with respect to the issue of truth. For purposes of their summary judgment motion at least, defendants appear to accept the plaintiffs' recitation of the words spoken by Malling. The parties strongly disagree, however, as to the meaning of those words as reasonably understood by the audience. *See generally Restatement (Second) of Torts* § 563 ("The meaning of a communication is that which the recipient correctly, or mistakenly but reasonably, understands that it was intended to express."). Determining that meaning and assessing whether it was true are ordinarily tasks for the jury. *See generally id.* § 614(2) ("The jury determines whether a communication, capable of defamatory meaning, was so understood by its recipient."); *id.* § 617(b) ("Subject to the control of the court whenever the issue arises, the jury determines whether ... the matter was true or false...."). There is no question on the record that there were irregularities in Mr. Krochalis' expense reports. There is conflicting evidence, however, as to whether Krochalis or his superior was responsible for those irregularities. The vagueness of Malling's remarks may have reasonably led the recipients of those remarks to believe that Krochalis had engaged in conduct fundamentally different from Krochalis' actual conduct. Before determining whether any defamatory imputations were true, the trier of fact must determine what those imputations were. Those determinations present material issues of fact for the jury, precluding summary judgment.

### B. *Qualified Privilege*

Malice is an essential element in a defamation action under Pennsylvania law. *Corabi*, 441 Pa. at 451, 273 A.2d 899. Malice generally is presumed to exist from the unprivileged publication of defamatory re-

marks. *Id.* Certain defamatory communications are qualifiedly or conditionally privileged and do not form the basis for liability unless the plaintiff proves that the privilege was abused. *Montgomery v. Philadelphia*, 392 Pa. 178, 182, 140 A.2d 100 (1958). This defense of qualified privilege " 'rests upon the ... idea, that conduct which otherwise would be actionable is to escape liability because the defendant is acting in furtherance of some interest of social importance, which is entitled to protection even at the expense of uncompensated harm to the plaintiff's reputation.' " *Id.* (quoting W. Prosser, Torts 607 (2d ed. 1955)).

If some important social interest warrants the recognition of a qualifiedly privileged occasion, liability for defamation is only imposed if plaintiff proves that the privilege was abused. The traditional rule is that plaintiff must prove malice to establish abuse of a qualified privilege "by showing that the defamatory communication was made for an improper motive, in an improper manner, or was not based upon reasonable or probable cause." *Id.;* *see also Montgomery v. Dennison*, 363 Pa. 255, 264, 69 A.2d 520 (1949), *Restatement (First) of Torts* §§ 600–605. Lack of reasonable cause to believe the truth of a statement is similar to negligence, although other types of abuse of the qualified privilege are essentially based on a standard of malice or an intent to harm the plaintiff's reputation. Since the Supreme Court held in *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974), that liability cannot be imposed in a defamation action without a showing of fault, it has been suggested that qualified privileges are meaningless if they can be overcome by a mere standard of negligence, and that a higher standard of fault should be required to establish abuse of a qualified privilege. *See Restatement (Second) of Torts* § 600 (suggesting that a qualified privilege is abused only if published with knowledge of falsity or with reckless disregard as to truth or falsity). Pennsylvania courts, however, have retained the

traditional rule that negligent publication of a defamatory statement as well as malicious publication can establish an abuse of the privilege. *Hepps v. Philadelphia Newspapers, Inc.,* 506 Pa. 304, 485 A.2d 374, 380 (1984); *Chicarella v. Passant,* 343 Pa.Super. 330, 494 A.2d 1109, 1113 (1985). *But see Banas v. Matthews International Corp.,* 116 L.R.R.M. 3110 (Pa.Super.1984); *Berg v. Consolidated Freightways, Inc.* 280 Pa.Super. 495, 421 A.2d 831 (1980).

 The court generally determines whether an occasion of publication is privileged, and the jury generally determines whether a privilege has been abused. *See Restatement (Second) of Torts* § 619. Communications between an employer and its employees with respect to matters of common concern relative to the operation of the business may be protected by a qualified privilege. *See Banas v. Matthews International Corp.,* 116 L.R.R.M. 3110 (Pa.Super.1984); *Berg v. Consolidated Freightways, Inc.,* 280 Pa.Super. 495, 421 A.2d 831 (1980). The communication made by Malling is subject to a qualified privilege, but defendants are not entitled to summary judgment because there are material issues of fact as to whether the privilege was abused.

Defendants contend that Malling's statements were made for valid business purposes in that the employees in Mr. Krochalis' department needed to know how the department would operate without Mr. Krochalis, what was happening with respect to the audit of the department, and what was expected of them with respect to expense recordkeeping. Plaintiffs contend that there was an excessive publication constituting an abuse of the qualified privilege because many employees were present at the meeting and heard Malling's comments who had no responsibilities for filling out expense reports. *See generally Restatement (Second) of Torts* § 604 (Excessive Publication). Whether there was an excessive publication is a matter of factual dispute for the jury to resolve in determining whether a qualified privilege was abused. Defendants are not entitled to

summary judgment on the ground of qualified privilege.

### C. *Lack of Reasonable Care to Ascertain the Truth*

 Defendants also contend that they are entitled to summary judgment because the evidence of record demonstrates that Malling exercised all reasonable care and was not negligent. Both the federal Constitution and the law of Pennsylvania require a defamation plaintiff to prove fault, either in the form of negligence or malice, before recovering damages. *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974); *Hepps v. Philadelphia Newspapers, Inc.,* 506 Pa. 304, 485 A.2d 374 (1984), *probable jurisdiction noted,* ── U.S. ──, 105 S.Ct. 3496, 87 L.Ed.2d 628 (1985); *Summit Hotel Co. v. National Broadcasting Co.,* 336 Pa. 182, 8 A.2d 302 (1939); 42 Pa.Cons.Stat. § 8344. Defendants contend that Malling exercised due care because he relied on the thorough examination of the auditors. What constitutes reasonable care must be determined upon an evaluation of all the factual circumstances and is solely the province of the trier of fact. *See Restatement (Second) of Torts* § 617(c) ("Subject to the control of the court ... the jury determines whether ... the defendant had the requisite fault in regard to the truth or falsity of the matter and its defamatory character."). Defendants are not entitled to summary judgment on the ground that Malling was not negligent.

### D. *Other Defamation Counts*

In addition to Count I, which alleges defamation based on Malling's remarks at the February 2, 1982 meeting, plaintiffs' complaint contains three other defamation counts. Count II alleges slander of Mr. Krochalis by defendants, claiming that in addition to Malling's remarks at the February 2, 1982 meeting "Defendant(s) spoke other words, and communicated other thoughts, all of which were untrue and defamatory." Count III alleges that "Defendant(s) committed acts of defamation by their conduct, such as, *inter alia,* prepar-

ing and/or undertaking steps to physically remove Plaintiff from the INA Building by uniformed security police, and by physical force." Finally, Count XI alleges that "[p]rior to February 2, 1982 [Deborah Krochalis] had been employed by Defendant INA, and Defendant(s) slandered and accused [her] of obtaining money by false pretense."

■ Count II fails to specify any statements made by any person to another person beyond those alleged in Count I. Defendants have attempted to elicit any such statements from Mr. Krochalis through discovery, but Mr. Krochalis has repeatedly responded that he has no knowledge of any defamatory communications other than Mr. Malling's remarks at the February 2, 1982 meeting, which are the subject of Count I. *See* Exhibit B to Defendants' Memorandum; Krochalis Deposition 410, 433. Pennsylvania law requires a defamation complaint "to allege with particularity the content of oral or written statements claimed to have been made, the identity of the persons making such statements, and the identity of the persons to whom the statements were made." *Itri v. Lewis*, 281 Pa. Super. 521, 523, 422 A.2d 591, 592 (1980); *Gross v. United Engineers & Constructors, Inc.*, 224 Pa.Super. 233, 235, 302 A.2d 370, 371 (1973); *accord Spain v. Vicente*, 315 Pa.Super. 135, 144, 461 A.2d 833 (1983).

Federal pleading practice may not require the stringent particularity of pleading defamation claims that Pennsylvania practice requires. *See Karr v. Township of Lower Merion*, 582 F.Supp. 410 (E.D.Pa. 1983). Nevertheless, at the stage of a summary judgment motion, if not on a motion to dismiss, where the plaintiff cannot identify any defamatory communication, the defendants are entitled to judgment as a matter of law. *Cf. Gross v. United Engineers & Constructors, Inc.*, 224 Pa.Super. 233, 302 A.2d 370 (1973) (demurrer affirmed where plaintiff failed to plead material facts upon which defamation claim was based and failed to supply such information upon deposition). There is no evidence of any communication defamatory

to Mr. Krochalis other than Malling's remarks at the February 2, 1982 meeting. Defendants are entitled to summary judgment on Count II.

Count III alleges slander by conduct. The complaint alleges that "[o]n or about February 2, 1982, Defendant(s) committed acts of defamation by their conduct, such as *inter alia*, preparing and/or undertaking steps to physically remove Plaintiff from the INA Building by uniform security police, and by physical force." Complaint ¶ 23. Plaintiffs further proffer in opposition to defendants' motion for summary judgment on Count III that defendants undertook steps to have Mr. Krochalis' photograph circulated to security personnel for the purpose of apprehending and removing him if he were caught on the premises. These actions, plaintiffs contend, created the impression that Mr. Krochalis was guilty of "criminal-like misconduct."

■ Neither side has cited any cases involving slander by conduct, but it appears that Pennsylvania law allows defamation actions for nonverbal as well as verbal communication. *See Berg v. Consolidated Freightways, Inc.*, 280 Pa.Super. 495, 421 A.2d 831 (1980); *see also Bennett v. Norban*, 396 Pa. 94, 151 A.2d 476 (1959). Certainly all of the circumstances and events surrounding Malling's February 2, 1982 remarks might be relevant evidence to establish defamatory innuendo in those alleged actions. *Cf. Berg*, 421 A.2d at 833–34 (circumstances of employment termination may have been defamatory). Whether the record is sufficient to support a separate count of slander by nonverbal conduct, however, is a different question.

■ Although Pat Hasson, the director of personnel of INA, apparently threatened to send security guards to bring Mr. Krochalis to his office, suggesting that such might cause a scene, there is no dispute that Krochalis went to Hasson's office without requiring a security escort. The conduct about which Krochalis complains never took place. If Krochalis had been accosted by security guards in a manner that reasonably imputed that he had en-

gaged in criminal conduct, then he might have a defamation action based on the physical conduct of the guards. *Cf. Bennett v. Norban*, 396 Pa. 94, 151 A.2d 476 (1959) (woman accosted and searched in street outside store by merchant; nonverbal conduct was capable of defamatory meaning).

■ Plaintiffs also suggest that the defendants defamed Mr. Krochalis by circulating his photograph to the building security guards. The dissemination of a mug shot can be defamatory if it imputes criminal behavior. *See Paul v. Davis*, 424 U.S. 693, 697, 96 S.Ct. 1155, 1158, 47 L.Ed.2d 405 (1976). In *Paul v. Davis* the Supreme Court assumed that distribution of a mug shot to merchants under the heading "active shoplifters" imputed criminal behavior and, therefore, was defamatory. 424 U.S. at 697, 96 S.Ct. at 1158. In the present case, there is no evidence that any photograph of Mr. Krochalis was distributed that bore any indication or inference of criminal conduct. In fact, the entire record strongly suggests that the reason a photograph may have been given to the building security guards was simply to prevent Mr. Krochalis from returning to his former office and disrupting the company's business after the termination of his employment. His appearance at the office on February 2, 1982, after resigning, certainly must have been confusing to the employees in his department and INA may have wanted to prohibit any reoccurrence of such an incident. It seems doubtful that the circulation of Mr. Krochalis' photograph among security personnel was a publication capable of defamatory meaning. Defendants have not, however, demonstrated the lack of any material issue of fact with respect to the defamatory meaning of this "publication." Although the issue has not been briefed by the parties, it would appear that any distribution of Mr. Krochalis' photograph was a privileged occasion. At trial it may be appropriate to grant defendants judgment on Count III, but at this point defendants have not demonstrated that they are entitled to judgment on that count as a matter of law.

In Count XI plaintiffs allege that defendants defamed Debra Krochalis. Defendants contend that her cause of action is barred by the one-year statute of limitations for defamation actions, 42 Pa.Cons. Stat.Ann. § 5523(1), and that she has failed to allege with particularity any defamatory communication. According to Mr. Krochalis, some communications were made to him on February 1, 1982 concerning improprieties by both him and his wife. A claim concerning any defamatory publication to Mr. Krochalis concerning Mrs. Krochalis made on that date would not be barred by the statute of limitations because the complaint was filed on January 28, 1983.

■ Plaintiffs contend that, although no specific reference was made to Debra Krochalis on February 1, 1982, William Krochalis understood his discharge for wrongful conduct after the audit to imply that the auditors were reaffirming the accusations against both him and his wife that the auditors had made in December of 1981. The auditors had indicated that it may have been improper for Mr. Krochalis to have employed his wife in a project for INA, and apparently had intimated that the work may not have been properly performed. Moreover, Mrs. Krochalis may have been implicated in some of the improper expense vouchers allegedly submitted by Mr. Krochalis. Even if there was a false and defamatory publication concerning Mrs. Krochalis made to Mr. Krochalis on February 1, 1982, that publication was made on a privileged occasion and there is no evidence of abuse of the privilege. Both the auditors' inquiries to Mr. Krochalis in December 1981 and Krochalis' discharge on February 1, 1982 were conditionally privileged occasions because of the common business interest of the parties to the communications in ensuring propriety in the conduct of INA's business affairs. *Cf., e.g., Harbridge v. Greyhound Lines, Inc.*, 294 F.Supp. 1059 (E.D.Pa.1969) (statements made during investigation of shortage of funds were privileged). There is no evidence of abuse of that privilege.

The statements were made only to William Krochalis and were limited to subject matter within the privilege. Plaintiffs do not contend that Malling's remarks to other employees on February 2, 1982, were understood to have defamatorily referred to Mrs. Krochalis. Judgment will be entered in favor of defendants on Count XI.[3]

## II. *Assault*

■ William Krochalis contends that Pat Hasson's threats to him over the phone on February 2, 1982, constitute an assault. Even construing Hasson's remarks most favorably to plaintiffs as constituting threats of the use of physical force on Mr. Krochalis, they fail to rise to the level of an assault as a matter of law.

An assault is *"an act* intended to put another person in reasonable apprehension of an immediate battery, and which succeeds in causing an apprehension of such battery." *Cucinotti v. Ortmann*, 399 Pa. 26, 27, 159 A.2d 216 (1960). "Words in themselves, no matter how threatening, do not constitute an assault; the actor must be in a position to carry out the threat immediately, and he must take some affirmative action to do so." *Id.*

Hasson may have intended to put Krochalis in apprehension of an offensive touching by security guards, but he was in no position to carry out the threat of an offensive touching immediately, nor did he take any action to do so. Judgment must be granted in favor of defendants as a matter of law with respect to Count IV based on assault.

## III. *False Imprisonment*

■ William Krochalis contends that he was falsely imprisoned on February 2, 1982, when Pat Hasson requested that Krochalis come to his office. Krochalis refused to talk to Hasson on the phone, and Hasson told Krochalis' secretary that he would have security guards remove Krochalis from his office if Krochalis refused to come down to Hasson's office. Hasson

repeated this threat to Krochalis when Krochalis finally did speak to him on the phone. Krochalis ended up going to Hasson's office, where he was told that his employment was terminated and that he should leave the premises. Krochalis contends that he was confined in Hasson's office under threat of physical force.

The only threat of physical force Krochalis has identified that may have coerced him to go to Hasson's office and remain there was the threat to have security guards remove Krochalis from his office, and presumably from the INA building. An actor is liable for false imprisonment if:

(a) he acts intending to confine the other or a third person within boundaries fixed by the actor, and

(b) his act directly or indirectly results in such a confinement of the other, and

(c) the other is conscious of the confinement or is harmed by it.

*Gagliardi v. Lynn*, 446 Pa. 144, 148 n. 2, 285 A.2d 109 (1971) (quoting *Restatement (Second) of Torts* § 35). "The confinement within the boundaries fixed by the defendant must be complete; if there is a known, safe means of escape, involving only a slight inconvenience, there is no false imprisonment." *Chicarelli v. Plymouth Garden Apartments*, 551 F.Supp. 532, 541 (E.D.Pa.1982). In the present case, Krochalis was only confined by a threat to remove him from the premises. In such circumstances, he plainly had a "known, safe means of escape" which involved only a slight inconvenience. He could simply leave the building. There was no confinement forming the basis for a false imprisonment. Defendants are entitled to summary judgment on Count V.

## IV. *Invasion of Privacy*

■ In Count VI plaintiffs contend that the defendants' acts and conduct on or about February 2, 1982 invaded William Krochalis' right to privacy. The Pennsylvania Supreme Court has cited with ap-

---

**3.** Although Laura Shick, in her deposition, did refer to certain alleged improprieties involving Mrs. Krochalis, she clearly indicated that her information came from Mrs. Krochalis herself (and from her attorney Gregory Rubin). *See* Shick Deposition at 41.

proval the *Restatement (Second) of Torts* sections on invasion of privacy. *Vogel v. W.T. Grant Co.*, 458 Pa. 124, 327 A.2d 133 (1974). The *Restatement (Second) of Torts* notes that "[t]he right of privacy is invaded by (a) unreasonable intrusion upon the seclusion of another ...; or (b) appropriation of the other's name or likeness ...; or (c) unreasonable publicity given to the other's private life ...; or (d) publicity that unreasonably places the other in a false light before the public." *Restatement (Second) of Torts* § 652A(2). Plaintiffs' complaint alleges that defendants "interfered with, and invaded, [William Krochalis'] right to privacy, right to be let alone, and privilege of personal privacy." Complaint ¶ 35. There are no facts in this case that would support a cause of action for intrusion upon seclusion or appropriation of name or likeness. Plaintiffs' response to defendants' summary judgment motion claims that defendants placed William Krochalis in a false light before the public. Defendants claim that they cannot be liable for invasion of privacy because there is no evidence of any communication to the public at large.

Publicity sufficient to support a cause of action for publicity given to private life or publicity placing a person in a false light is defined in the comments to the *Restatement:*

"Publicity" ... means that the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge....

Thus it is not an invasion of the right of privacy ... to communicate a fact concerning the plaintiff's private life to a single person or even to a small group of persons.

*Restatement (Second) of Torts* § 652D comment a. In *Vogel v. W.T. Grant Co.*, 458 Pa. 124, 327 A.2d 133 (1974), the Pennsylvania Supreme Court held that communication to an employer and three relatives concerning a credit arrearage did not constitute sufficient publicity to form the basis for an action for publicity given to private life. In the present case, by contrast, there is at least some evidence that some information concerning Mr. Krochalis' termination was common knowledge throughout the insurance industry. *See, e.g.,* Shick Deposition at 57–59. In *Wells v. Thomas,* 569 F.Supp. 426, 437 (E.D.Pa.1983), Judge Giles was faced with a similar record in an employment termination case involving a claim for invasion of privacy and held that there was insufficient evidence of publicity to survive defendants' summary judgment motion:

Plaintiff alleges that one individual at HUP [the Hospital of the University of Pennsylvania] was informed of the terms of her separation agreement at a meeting of hospital staff members, while another person was informed by one of the named defendants personally. Therefore, it is alleged that the private facts became common knowledge at HUP. These facts, viewed in the light most favorable to the plaintiff, do not constitute the requisite level of "publicity" required to state a valid claim. Publication to the community of employees at staff meetings and discussions between defendants and other employees is clearly different from the type of *public* disclosure found in cases relied upon by plaintiff.

Similar to *Wells v. Thomas,* the only communication by defendants alleged in this case is communication to employees at a staff meeting. In contrast to *Wells v. Thomas,* however, there is evidence in this case that the information became common knowledge not just at plaintiff's former workplace, but throughout the entire insurance industry. Under the circumstances, viewing the evidence in a light most favorable to plaintiffs, there is a material issue of fact whether any information placing Krochalis in a false light was communicated "to so many persons that the matter must be regarded as substantially certain to become one of public knowledge." Furthermore, defendants' argument that matters concerning one's employment are not part of one's private life would not entitle

them to summary judgment even if accepted as the law. Plaintiffs have made it clear that Krochalis seeks to recover for publication in a false light as opposed to publication of private facts. Defendants are not entitled to summary judgment on William Krochalis' invasion of privacy claim.

## V. *Intentional and Negligent Infliction of Emotional Distress*

William Krochalis seeks to recover for intentional and for negligent infliction of emotional distress. There is clearly no basis for a claim of negligent infliction of emotional distress. A cause of action for negligent infliction of emotional distress allows a plaintiff who suffers severe emotional injury caused by the negligence of another to recover damages only (1) where the emotional injury is accompanied by physical impact, *see Knaub v. Gotwalt*, 422 Pa. 267, 220 A.2d 646 (1966), (2) "where the plaintiff was in personal danger of physical impact because of the direction of a negligent force against him and where plaintiff actually did fear the physical impact," *Niederman v. Brodsky*, 436 Pa. 401, 413, 261 A.2d 84, 90 (1970), or (3) where the mental injury is foreseeable result of physical impact and injury to another, *Sinn v. Burd*, 486 Pa. 146, 404 A.2d 672 (1979). *See generally Kutner v. Eastern Airlines, Inc.*, 514 F.Supp. 553, 557–59 (E.D.Pa. 1981); *Cathcart v. Keene Industrial Insulation*, 324 Pa.Super. 123, 471 A.2d 493 (1984). William Krochalis' claim that the circumstances of the audit of his expense reports, the termination of his employment and the remarks made by Malling following his termination form a basis for liability for negligent infliction of emotional distress simply does not comport with the law of Pennsylvania. Krochalis' alleged emotional distress was not accompanied by physical trauma, nor was he placed in fear of any physical trauma. Defendants are entitled to summary judgment on William Krochalis' claim of negligent infliction of emotional distress.

William Krochalis also seeks to recover for intentional infliction of emotional distress. Pennsylvania recognizes a cause of action for intentional infliction of emotional distress. *Papieves v. Lawrence*, 437 Pa. 373, 263 A.2d 118 (1970). The precise contours of this tort are not well defined, and Pennsylvania courts generally look to the *Restatement (Second) of Torts* § 46 for guidance in determining whether a valid claim exists for intentional infliction of emotional distress. *See, e.g., Jones v. Nissenbaum, Rudolph & Seidner*, 244 Pa.Super. 377, 368 A.2d 770 (1976). Section 46 of the Second Restatement provides that:

> (1) One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.

The Third Circuit Court of Appeals has noted that there are four elements to an action for intentional infliction of emotional distress: "(1) the conduct must be extreme and outrageous; (2) the conduct must be intentional or reckless; (3) it must cause emotional distress; and (4) the distress must be severe." *Chuy v. Philadelphia Eagles Football Club*, 595 F.2d 1265, 1273 (3d Cir.1979). Before submitting a claim for intentional infliction of emotional distress to a jury the "court must determine, as a matter of law, whether there is sufficient evidence for reasonable persons to find extreme or outrageous conduct." *Id.* at 1274. *See also Restatement (Second) of Torts* § 46 comment h.

In the present case, there is not sufficient evidence for reasonable persons to find extreme or outrageous conduct. A comment to the Restatement attempts to define what is meant by extreme and outrageous conduct:

> It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Lia-

bility has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

*Restatement (Second) of Torts* § 46 comment d. Conduct surrounding an employment termination generally does not amount to outrageous conduct sufficient to support a claim for intentional infliction of emotional distress. *See Madreperla v. Willard Co.*, 606 F.Supp. 874, 880 (E.D.Pa. 1985); *Wells v. Thomas*, 569 F.Supp. 426 (E.D.Pa.1983); *Cautilli v. GAF Corp.*, 531 F.Supp. 71 (E.D.Pa.1982). In the present case, Krochalis has alleged more than a simple employment termination dispute by alleging defamation. Malling's allegedly defamatory remarks and all of the defendants' conduct under the circumstances, however, cannot amount to extreme and outrageous conduct. Malling made some efforts to avoid discussing the circumstances of Krochalis' termination at the meeting. The comments regarding the audit, although they may have contained defamatory innuendo and may have portrayed Krochalis in a false light, were made to a group of employees that may have had a valid interest in the progress of the audit. Defendants' conduct in this case is simply not extreme and outrageous. *Compare Papieves*, 437 Pa. at 374–75, 263 A.2d 118 (hit and run driver hid body of pedestrian struck by car in garage for two days without seeking medical care and then buried the body to hide the deed). Defendants are entitled to summary judgment on Krochalis' claim of intentional infliction of emotional distress.

## VI. *Breach of Employment Contract*

William Krochalis alleges that defendants breached his employment contract by terminating his employment without cause. The record, however, discloses no basis upon which to find any oral or written employment contract.[4] Krochalis admits that no written contract of employment existed. He claims, however, that conversations with INA employees gave him the impression that he would remain employed by INA for a reasonable period of time. This impression or belief was based on conversations in which INA employees said Krochalis was doing a good job, discussed long-term projects with him, talked about his potential for top management positions with INA, or referred to stock option and benefit plans that would give Krochalis benefits over a period of several years. No one ever directly told Krochalis that he would "be employed for a reasonable period of time." Krochalis Deposition 459. On this record there is simply no basis for contention that Krochalis was other than an at-will employee. *Cf. Bruffett v. Warner Communications, Inc.*, 692 F.2d 910, 913 (3d Cir.1982).

## VII. *Punitive Damages and Loss of Consortium*

William Krochalis seeks punitive damages in conjunction with the causes of action he asserts in his complaint, and Debra Krochalis seeks damages for loss of her husband's consortium. Defendants contend that these claims for punitive damages and loss of consortium should be dismissed because defendants are entitled to judgment in their favor on all the underlying causes of action. Because I have determined that defendants are not entitled to summary judgment on all those underlying causes of action, I decline to grant defendants summary judgment on the punitive damages and loss of consortium claims.

## VIII. *Conclusion*

In summary, for the reasons stated above, I will grant defendants summary judgment on William Krochalis' claims for slander other than the communications spe-

---

4. There is no claim that Krochalis' employment termination violated any public policy. *Cf. No-*

*vosel v. Nationwide Insurance Co.*, 721 F.2d 894 (3d Cir.1983).

cifically identified, for assault, for false imprisonment, for negligent and intentional infliction of emotional distress, and for breach of contract. I will also grant defendants summary judgment motion on Debra Krochalis' claim of slander. I find, however, that material issues of fact preclude summary judgment on William Krochalis' basic claim for defamation, his claim for defamation by conduct, and his claim for invasion of privacy. Defendants' motion for summary judgment will be granted in part and denied in part.