**1058**

Todd M. GRIER, Plaintiff,

v.

John GALINAC, and Roberta Pisle, individually and as officers in the Police Department of the Township of Swatara, Defendants.

Civ. A. No. 1:CV–90–174.

United States District Court, M.D. Pennsylvania.

Sept. 26, 1990.

James H. Rowland, Jr., Harrisburg, Pa., for plaintiff.

Frank J. Lavery, Jr., Marshall, Dennehey, Warner, Coleman & Goggin, Harrisburg, Pa., for defendants.

## MEMORANDUM

CALDWELL, District Judge.

Defendants, John Galinac and Roberta Pisle, Swatara Township police officers, have filed a motion for summary judgment pursuant to Fed.R.Civ.P. 56. Plaintiff, Todd M. Grier, initiated this action under 42 U.S.C. § 1981 after the defendants detained him during their investigation of a bank robbery. Plaintiff contends that they were motivated by racial animus in doing so. The plaintiff is black and the defendants are white. Defendants' motion argues that the evidence gathered during the discovery period establishes that their conduct was proper. We had denied their motion to dismiss, see 740 F.Supp. 338 (M.D. Pa.1990), but we will grant their motion for summary judgment.[1]

---

1. We did, however, grant the motion to dismiss of the Township of Swatara. We also dismissed without prejudice the claim of Jocelyn E. Grier, plaintiff's minor daughter, for emotional dis-

The following is the background of this litigation. It is gleaned from plaintiff's answers to interrogatories, defendants' affidavits and plaintiff's deposition, along with plaintiff's affidavit, which was his only contribution to the record. We will track the defendants' version because they have provided the most detailed and undisputed account of the events. When appropriate, the plaintiff's disagreement with the defendants' version will be duly noted and discussed.

On October 10, 1989, at approximately 10:30 a.m. the Dauphin Deposit Bank at 6700 Derry Street in Swatara Township was robbed. Within minutes the Swatara Township Police Department was notified and officers were dispatched to the scene to investigate. A description of the suspect was given to the investigating officers. According to Pisle, the suspect was described only as "a black male wearing a beige coat and driving a brown car." (Pisle affidavit, ¶ 2.a). Pisle was also aware that the police had been notified shortly before the robbery that a brown Chevy Impala with license plate number K13–767, had been stolen at gun point in the City of Harrisburg. (*Id.*, ¶ 2.d). Defendant Galinac confirms Pisle's affidavit and adds that the getaway car was in fact identified as the auto that had been stolen in Harrisburg shortly before the robbery. (Galinac affidavit, ¶ 2.b).

Pisle began to search the area near the bank and at approximately 10:50 a.m. she observed the plaintiff sitting in "a brown over gold Thunderbird" with license plate number SKK–380 in a parking lot in front of 101 Worchester Avenue. (Pisle affidavit, ¶ 2.f). The car was only partially parked in a parking spot and there was no one else around. (*Id.*, ¶ 2.f). Grier appeared to be waiting for someone. (*Id.*). Pisle drove past the plaintiff's location to the parking lot at 113–121 Worchester Avenue where she saw the stolen Impala. (*Id.*, ¶ 2.g). At that point she decided to return to the plaintiff's car, which was about 100 to 200 yards from where the stolen car was found and about a half a mile from the

bank. (*Id.*, ¶ 2.h). She also radioed for assistance. (Galinac affidavit, ¶ 2.c).

When defendant Pisle returned, she found plaintiff behind the wheel of his car which was being pushed into a parking spot by a white male and a white female. She saw that he had a straggly beard and mustache and radioed to determine if the suspect in the bank robbery had any facial hair. (Pisle affidavit, ¶ 2.i).

Plaintiff does not seriously dispute this overview of events to this point except for the following. First, and most importantly, he asserts that the defendants had a fuller description of the suspect before they entered the area where plaintiff was located. Specifically, he contends the officers had been informed that, in addition to being a black male wearing a beige coat, the suspect was six foot one inch in height to six foot five inches, about 200 to 250 pounds in weight, and was wearing sneakers, white gloves and glasses. (Grier affidavit, ¶ 2.a; Grier deposition at pps. 28, 30–31). Second, when defendant Pisle first saw plaintiff as she drove past his position, he states that he was not in his car but was walking around outside it. She would therefore have observed that he did not fit the description of the robber since plaintiff is five foot six inches tall and weighs 165 pounds. Third, he alleges Officer Pisle also saw at this time plaintiff's two year old daughter who was in the car but plainly visible. Fourth, he contends the police did not in fact find the stolen car until after the plaintiff had been detained.

When defendant Galinac arrived at the scene and the two officers confronted plaintiff, the accounts vary somewhat more. Plaintiff asserts that, although he obeyed the officers directions and made no threatening moves, Galinac kept a gun pointed at his head at all times and used profanity at one point. He states that Pisle grabbed him roughly by the shirt collar while frisking him and slammed his hands onto his car even though he had already placed them there at the direction of the officers. The whole encounter may have taken as long as 10 minutes and during this time his daugh-

tress, and the plaintiff's claim for damages aris-

ing from his daughter's claim.

ter became hysterical. The officers did not tell him why they were detaining him until after they decided to release him, upon confirming that he was not the suspect. Significantly, plaintiff also asserts that during the stop he heard a report over Pisle's walkie-talkie that the suspect had no facial hair. At that point Pisle began to search a lab coat he had in his car. Finally, although he was under suspicion as a bank robber, the two whites who were apparently helping him were not arrested or interrogated.

Defendants' version of the rest of the encounter is as follows. Galinac's affidavit admits that he did draw his gun but only after it appeared that plaintiff was not going to be cooperative, and he kept the gun pointed at the ground during the entire incident. Defendants were responsive to plaintiff's questions concerning what was going on. They informed him before the frisk, which only took about twenty seconds, that they were investigating a robbery. The hand Pisle placed at the back of plaintiff's neck was there in accordance with standard police procedure to detect any movement during the frisk. After the radio dispatch came in about the suspect's lack of facial hair, Pisle did search the car and jacket. She then saw plaintiff's daughter lying on the front seat while she was attempting to obtain the plaintiff's identity, after it was decided he was not the suspect. At this time she also informed plaintiff that they were looking for a much taller and heavier man. But this information had been received by radio only at the conclusion of the frisk. (Galinac affidavit, ¶ 2.g). Contrary to plaintiff's contention, Pisle did interview the two whites who were pushing the car. (Pisle affidavit, ¶ 2.q). The entire stop took only about one and a half minutes. Both officers specifically deny any racial animus in their contact with plaintiff and assert they would have detained and searched persons of other races in the same circumstances. (Pisle affidavit, ¶ 2.t; Galinac affidavit, ¶ 2.i).

It is apparent from plaintiff's opposition brief that this case turns upon whether the defendants violated section 1981 by allowing racial animus to motivate their conduct in initiating the investigatory stop.[2] Intentional discrimination on the basis of race is a necessary element of a section 1981 claim. *See DiGiovanni v. City of Philadelphia*, 531 F.Supp. 141 (E.D.Pa.1982). There is insufficient evidence in the record to support a reasonable jury verdict in favor of the plaintiff on this essential issue.

▬ Two allegations are crucial to plaintiff's argument that he was detained and questioned solely because he was black: (1) the defendants had a full description of the suspect before they began to search the area; (2) the police did not in fact find the stolen vehicle until after Pisle had questioned him. The only evidence to support these assertions comes from plaintiff's affidavit and his deposition.

Rule 56(e) provides that "opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Depositions relied upon in summary judgment proceedings must satisfy the same criteria. *See Greyhound Financial Corp. v. Willyard*, 1989 WL 201094 (D.Utah); *Miller v. United States*, 723 F.Supp. 1354 (D.Ariz.1988). *See also generally, Williams v. Borough of West Chester*, 891 F.2d 458 (3d Cir.1989); *Garside v. Osco Drug, Inc.*, 895 F.2d 46 (1st Cir.1990) (at summary judgment stage interrogatory answers must be given on personal knowledge).

Plaintiff's affidavit and deposition testimony fail to satisfy Rule 56(e) because it has not been affirmatively shown that the

---

**2.** While plaintiff's brief sometimes calls the encounter an arrest, there is no case law cited or argument made to support this conclusion. A number of circumstances must be examined to determine whether a detention or a seizure of the person was an investigatory stop or an arrest. *See Pliska v. City of Stevens Point*, 823 F.2d 1168 (7th Cir.1987); *United States v. Kapperman*, 764 F.2d 786 (11th Cir.1984). Our examination of the facts indicates that it was an investigatory stop. Grier did not believe he had been arrested either. (Grier deposition at p. 36).

portions relied upon as proof of the above crucial allegations have been given on personal knowledge.[3] It is true that the affidavit does assert that it is based upon personal knowledge, but this conclusory assertion cannot be given decisive effect. The Rule requires that the affidavit affirmatively *show* that it is so based.

In regard to the first allegation, a private citizen would not ordinarily have access to police communications, especially if he has testified that he was trying to get his car started at the time the police would have been broadcasting a description of the robber. Hence, plaintiff's affidavit fails to demonstrate personal knowledge of what was known to the defendants at the time he was stopped. The deposition is less helpful to plaintiff since it clearly shows that plaintiff's knowledge concerning the description of the suspect is based upon hearsay. Specifically, plaintiff testified that someone in the media, who he could not name and who he admitted might not be a reliable source, told him that the police had a full description of the suspect between 8:00 a.m. and 10:00 a.m., before they began their search.[4]

A similar analysis applies to the second allegation. It is not apparent from the face of the affidavit or the deposition how plaintiff acquired the knowledge that the police in fact found the stolen vehicle after they detained him. There may be circumstances in certain cases in which personal knowledge could be presumed for purposes of summary judgment. *See Krochalis v. Insurance Company of North America,* 629 F.Supp. 1360 (E.D.Pa.1985). There may be others in which hearsay can be ignored either because there is an applicable exception or the source of the hearsay is an identifiable witness, so that the defect can be cured at trial. *See Williams, supra,* 891 F.2d at 466 n. 12. Here, however, there is no way that either assertion appears to be reducible to admissible evidence. We will therefore ignore them in deciding the summary judgment motion.

■ Based upon the foregoing, the only evidence to rebut the defendants' motion is that Pisle saw plaintiff's two year old daughter with him the first time she passed his vehicle. The argument is that it is highly unlikely that a child so young would accompany a bank robber and hence Pisle had an illicit racial motive in stopping plaintiff. This evidence is not sufficiently probative in light of the officers uncontradicted affidavits that they did not have a full description of the robber and knew only that he was a black male, that their sighting of the plaintiff was near in both time and place to the robbery, and that the stolen vehicle which fit the description of the getaway car was found only a few hundred yards from plaintiff's location. Moreover, plaintiff himself admits that information about the suspect's lack of facial hair came over Pisle's walkie-talkie during his detention. It is not reasonable to infer that Pisle would have bothered to confirm that aspect of the suspect's appearance if she was just interested in harassing a citizen on account of his race.

The evidence against Galinac is even less probative than that against Pisle. No evidence was presented that these officers coordinated their efforts. Galinac was merely responding to Pisle's call for assistance. He left the area as soon as it was determined that plaintiff was not the suspect.

Our conclusion is the same even if it is additionally considered that the two whites who were present when Pisle returned were not interrogated. No evidence was presented that these people represented a threat to the officers. Any concern that

---

**3.** We recognize that defendants have not made this objection but we have discretion to raise the issue *sua sponte. See Egger v. Phillips,* 710 F.2d 292, 311 n. 19 (7th Cir.1983); *CMS Industries, Inc. v. L.P.S. International, Ltd.,* 643 F.2d 289 (5th Cir. Unit B April 1981); *Becker v. Koza,* 53 F.R.D. 416 (D.Neb.1971). *But see Skillsky v. Lucky Stores, Inc.,* 893 F.2d 1088, 1094 (9th Cir.1990).

**4.** These hours are before the bank robbery occurred. Perhaps, the description concerned the person who had stolen the car in Harrisburg. Thus, it would not have been probative of the time the police received a full description of the bank robber. In any event, the testimony is hearsay and will not be considered.

**1062**

the defendants should have had about them disappeared as soon as it was determined that plaintiff was not the suspect.

Because plaintiff has failed to show that racial animus motivated the defendants, we will grant their motion for summary judgment.

 We might also add that an investigatory stop is valid if based upon reasonable suspicion that criminal activity is afoot. The reasonable suspicion must be based upon articulable facts reasonably warranting the intrusion. The circumstances need not rise to the level necessary to show probable cause for an arrest. *United States v. Rickus*, 737 F.2d 360 (3d Cir.1984). They may be entirely consistent with innocence. *United States v. Veatch*, 596 F.Supp. 1327 (W.D.Pa.1984).

Defendants' stop and detention of the plaintiff was within this standard even if we accept plaintiff's version of the duration of the stop and the manner in which the defendants acted. Ten minutes duration is not that unusual for an investigatory stop. *See Pliska v. City of Stevens Point*, 823 F.2d 1168 (7th Cir.1987). Grier knew that defendants were police officers and that they were engaged in some sort of police activity. (Grier deposition at p. 20). He also does not dispute that they were looking for an armed suspect. Moreover, plaintiff's testimony reveals that any threat of force represented by a pointed gun was conditioned upon plaintiff's disobeying the police officers' directions. Under these circumstances, there was nothing actionable about Galinac's conduct although plaintiff undoubtedly suffered some emotional distress during the incident. *See Simons v. Montgomery County Police Officers*, 762 F.2d 30 (4th Cir.1985); *Hinojosa v. City of Terrell*, 834 F.2d 1223 (5th Cir.1988). *Compare Black v. Stephens*, 662 F.2d 181 (3d Cir.1981). Finally, Officer Pisle's actions in contacting plaintiff's hands and neck, even if she acted somewhat roughly, do not appear to have been out of the ordinary for a frisk. Plaintiff suffered no injury and sought no medical assistance as a result of the contact.

We will issue an appropriate order.