UNITED STATES of America

v.

**NEW HOLLAND SALES STABLES, INC.**

UNITED STATES of America

v.

**VINTAGE SALES STABLES, INC.**

UNITED STATES of America

v.

**WALTER DUNLAP & SONS, INC.**

**Civ. A. Nos. 83–6230 to 83–6232.**

United States District Court, E.D. Pennsylvania.

Sept. 26, 1985.

Stanley Weinberg, Asst. U.S. Atty., Philadelphia, Pa., for U.S.

James H. Thomas, Lancaster, Pa., for New Holland Sales Stables, Inc.

E. Raymond Lynch, Lionville, Pa., for Vintage Sales Stables, Inc.

E. Lawrence Oldfield, Chicago, Ill., for Walter Dunlap & Sons, Inc.

## MEMORANDUM AND ORDER

HUYETT, District Judge.

This is an action in conversion brought by the United States of America on behalf of the Farmers Home Administration (FmHA), holder of security interests in 236 head of cattle. Each defendant is a livestock commission merchant or broker and handled the sales of some of the 236 head of cattle. Holding that defendants had interfered with the government's security interest and thus were liable in conversion to the United States, I granted the government's motion for summary judgment as to liability on December 19, 1984, 603 F.Supp. 1379.

This action is now scheduled for trial on September 30, 1985 solely on the issue of damages. Presently pending before me are motions *in limine* filed by both parties which I shall address *seriatim*. At the

outset, I want to emphasize two points and then make some general comments about conversion actions. First, this is an action in conversion and the common law pertaining to conversion governs. Second, I have already ruled on the issue of liability and defense counsel should not attempt to relitigate liability before the jury.

Conversion is the wrongful taking of or interference with an interest in property. *United States v. Sommerville*, 324 F.2d 712, 713 (3d Cir.1963). The conversion in these cases occurred at the time the cattle were sold by the defendant auctioneers. *United States v. Gallatin Livestock Auction, Inc.*, 448 F.Supp. 616, 621 (W.D.Mo. 1978). Each sale deprived the FmHA of its security interest in the cattle sold.

■ Under the Restatement Second Torts § 927(1), a party who is entitled to a judgment for the conversion of a chattel may recover "the value of the subject matter of his interest in it at the time and place of the conversion." In other words, the presumption is that the damage caused by the wrongful conversion will be the value of the property at the time of the conversion. The plaintiff has the burden of proving the value of the property while the burden is on the defendants to prove facts which will permit a reduction or mitigation of the damages claimed. 89 C.J.S. § 121. *See also* 18 Am.Jur.2d § 82 *et seq.*

Holding that auctioneers had to be held "strictly accountable," the Third Circuit in *United States v. Sommerville*, 324 F.2d at 718, affirmed the lower court's award of damages equal to the value of the livestock at the time of the conversion, i.e. at the time of the sale. Similarly, in *United States v. Matthews*, 244 F.2d 626 (9th Cir. 1957), the court held that auctioneers were liable to the government for conversion even though the government had not foreclosed its mortgage and actually sustained some loss after realizing on its remaining security. "The mortgagee need not first establish that, like a honey-bee, he has flitted from security flower to security flower, and still has not been able to collect sufficient property pollen to satisfy his hun-

ger." *Id.* at 629. It was for the defendant auctioneers to establish that the government had received payments out of the proceeds of the sales. *Id.* at 633.

More recently, the Third Circuit, holding that payment of the chattel's full value to the original owner by the original converter precluded the original owner from further recovery, adopted the Restatement principle that a plaintiff who proves conversion is entitled to damages equal to the full value of the chattel at the time and place of conversion. *Baram v. Farugia*, 606 F.2d 42 (3d Cir.1979). The effect, long recognized by the courts is to force the converter to buy the chattel. Once the market value of the chattels converted is established it is for the converter to prove the amount of the proceeds which have already been remitted to the government.

With these principles in mind, I will now address the motions *in limine*.

### BURDEN OF PROOF

Defendants are seeking an order to the effect that the burden of proof at trial will be on the plaintiff to establish the full extent of its actual damages. Defendants rely heavily upon the Third Circuit's opinion in *Knuth v. Erie Crawford Dairy Cooperative Association*, 463 F.2d 470 (3d Cir.1972), *cert. denied*, 410 U.S. 913, 93 S.Ct. 966, 35 L.Ed.2d 278 (1973), *on remand*, 58 F.R.D. 646 (W.D.Pa.), *aff'd. without published opinion*, 487 F.2d 1394 (3d Cir.1973) for the proposition that the burden of proving damages should be on the plaintiff at the upcoming trial. *Knuth* involves a complex situation in which milk producers sued their cooperative for conversion on the grounds that they were entitled to the money that the cooperative had paid as rebates to dairies or milk handlers to meet competition prices. The trial court had permitted plaintiffs to proceed on a theory that it was the money which had been converted and charged the jury that plaintiffs were entitled to the "legal" price for their milk and that the cooperative could not legally pay a rebate to a dairy the effect of which was to undercut the "legal" price and reduce the amount the producers

received. The jury concluded that there had been conversion of the money.

The Third Circuit, in reversing and remanding for a new trial, held that the cooperative had converted the milk and not the money if it had converted anything. Noting that the measure of damages for conversion is the market value of the property converted, the Third Circuit found that by accepting the theory of conversion of money, the trial court had relieved the plaintiffs of the burden of proving damages. It was possible that the price the cooperative paid plaintiffs even after the rebate was higher than the market value of the milk; if this were true, plaintiffs had not been injured.

Although I accept the principles enunciated in *Knuth,* I believe that the present case presents a far different scenario which renders *Knuth* inapposite. First, in *Knuth,* liability was inextricably wound up with damages. In order to establish liability, plaintiffs had to show by how much they had been injured. Plaintiffs were entitled to receive the proceeds from the sale of their milk and in fact they had received some amount. It was for the plaintiffs to establish that they had not received the entire amount to which they were entitled.

■ Here, the FmHA, like the milk producers, held an interest in the cattle which were sold by defendant auctioneers on the open market. It is undisputed that the defendants paid the entire proceeds to the debtor farmer not the FmHA, and I have already concluded that defendants are liable to the government for the conversion. The presumption then arises that the damage caused by the conversion is the value of the property at the time of the conversion. All the parties agree that the price received at each auction reflects the value of the cattle at that time, and therefore, it can be presumed that the government's damages are equivalent to the market value of the cattle limited only by the value of the interest it held in them, i.e. the amount of the then outstanding debt. The government will undoubtedly introduce into evidence the amount of proceeds received

from each auction. This will satisfy the government's burden of proof; the burden will then be on the defendants to prove facts which warrant a reduction or mitigation of the damages claimed. *Barnes v. United States,* 685 F.2d 66, 698 (3d Cir. 1982). I will therefore deny defendants' motion as to the burden of proof.

### PROXIMATE CAUSE

■ Defendants have moved to have the issue of proximate cause presented to the jury. Defendants contend that any damage the government has sustained was caused by the farmer-debtor's breach of the security agreement, by the fact that the Nolls made payments to secured creditors and for living and operating expenses, and by the fact that the price of cattle fell while operating expenses rose. These facts simply are not material to the issue of damages.

■ Again, I remind defendants that this is an action in conversion, and I have already found defendants liable as a matter of law. Conversion is a tort of strict liability. *United States v. Gallatin Livestock Auction, Inc.,* 448 F.Supp. 616, 621 (W.D. Mo.2978). Moreover, causation is an element of liability which in this case has already been established. Accordingly, I will deny defendants' motion *in limine* as to proximate cause.

### AVOIDABLE CONSEQUENCES

■ Defendants also seek an order that the issue of avoidable consequences will be submitted to the jury. The Restatement (Second) of Torts § 918 states in pertinent part:

(1) Except as stated in Subsection (2), one injured by the tort of another is not entitled to recover damages for any harm that he could have avoided by the use of reasonable effort or expenditure after the commission of the tort.

(2) One is not prevented from recovering damages for a particular harm resulting from a tort if the tortfeasor intended the harm or was aware of it and was reck-

lessly disregardful of it, unless the injured person with knowledge of the danger of the harm intentionally or heedlessly failed to protect his own interests. The principle underlying this rule is that an injured party must mitigate the consequences of the tort which has injured him.

Defendants contend that this principle will apply in this case because the FmHA could have taken measures to ensure that it would receive the proceeds of the sales from the debtor farmer. The problem with this position is that at the time of the conversion, the damage to the government was done and the damage was measured by the value received for the cattle. There have been no "consequences" which the government could have avoided by taking any of the measures defendants suggest.

## PLAINTIFF'S MOTION IN LIMINE

■ Plaintiffs have moved to exclude all evidence pertaining to the facts raised in paragraph 4 of defendants' statement of undisputed facts. Defendants state that the total amount of proceeds remitted to the secured parties must be reduced to $26,495.77 because the FmHA received $25,000 from Moyer Packing Co. and $15,-341.78 from Lancaster Leaf in settlement of the FmHA's claims. This simply does not follow. There is no evidence that part of the $155,000 which the Nolls had remitted to the FmHA had not come from the proceeds of the sales handled by Moyer Packing Co. and Lancaster Leaf.

Moreover, each time defendants held an auction and sold the secured cattle, they committed a separate tort of conversion. Defendants, Moyer Packing Co., and Lancaster Leaf are not joint tortfeasors. Therefore, the collateral source rule of § 920A(2) of the Restatement (Second) of Torts applies. Section 920A states:

(2) Payments made to or benefits conferred on the injured party from other sources are not credited against the tortfeasor's liability, although they cover all or a part of the harm for which the tortfeasor is liable.

If the Nolls paid the government from sources other than the proceeds of a defendant's sales that source is a collateral source and does not entitle defendants to a credit.

Plaintiff however may not recover more than the interest it held in the cattle at the time of conversion. If for instance, the cattle were worth $200,000 and the secured debt was only $100,000, the FmHA would be entitled only to recover the $100,000. Technically, the conversion is of the government's security interest in the cattle. I will grant plaintiff's motion as to this issue. Similarly, I will grant plaintiff's motion to exclude evidence as to the calculations in the second sentence of paragraph 5.

The government objects to the evidence underlying the facts set forth in sentence one of paragraph six of the defendants' statement of undisputed facts pertaining to the estimates of operating expenses made in the Farm and Home Plan. I will grant this motion. Estimates of operating expenses were purely speculative and are irrelevant to the issue of damages. Similarly, I will grant plaintiff's motion to exclude evidence outlined in paragraphs 7 and 8 on the grounds that the facts alleged therein pertain to a defense to liability which I considered when addressing the cross-motions for summary judgment.

I have already addressed paragraphs one and two of defendants' disputed issues of fact and paragraphs one and four of defendants' statement of the legal issues in connection with defendants' motion to submit the issue of proximate cause to the jury and will grant plaintiff's motion to exclude any evidence covered by these paragraphs. Similarly, I will deny defendants' motion with respect to burden of proof and grant plaintiff's motion. The government will meet its burden by establishing the value received at each auction. The burden will then shift to the defendants to prove that the damages should be reduced because payments have been made to the FmHA.

■ Plaintiff also seeks to exclude evidence that some of the net sales proceeds were used by the Nolls to repay a loan

from the Commonwealth National Bank. Again, this is a conversion action not a secured transaction case. These facts are not relevant to the issue of damages. Therefore, I will grant the plaintiff's motion.

Plaintiff also seeks to exclude all evidence as to paragraphs four and five of defendants' statement of disputed facts which pertain to what approval the Nolls had received from the FmHA Supervisor before they made certain payments. These facts go to liability, and I have already addressed the materiality of these facts in connection with my rulings on liability. Finally, with respect to paragraph six, I will hold that the issue of avoidable consequences is not a part of this case and will not be submitted to the jury.

I have already addressed all of the points plaintiff raises in connection with defendants' statement of contested issues, and I will grant plaintiff's motion in its entirety. I will not review each item of evidence to which plaintiff has raised an objection, but I will advise defense counsel to limit the evidence they seek to admit to those issues which remain in light of my rulings herein.