**FORT WASHINGTON RESOURCES, INC., Plaintiff,**

v.

**Robert H. TANNEN, PH.D., Defendant/counterclaimant,**

v.

**Kirk PENDLETON, Counterclaim defendant,**

and

**Fort Washington Resources, Inc., Plaintiff/counterclaim defendant.**

No. 93–CV–2415.

United States District Court, E.D. Pennsylvania.

March 9, 1994.

See also 153 F.R.D. 565.

Allan C. Preziosi, Lightman & Associates, Philadelphia, PA, for Fort Washington Resources Inc. and Kirk Pendleton.

Laurence I. Tomar, Elizabeth A. Hunter, Law Office of Laurence I. Tomar, Yardley, PA, for Robert H. Tannen.

## Memorandum & Order

JOYNER, District Judge.

Presently before the Court are the cross-motions for summary judgment of the parties pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiff, Fort Washington Resources, Inc., commenced this action in May, 1993 against Dr. Tannen seeking recovery of damages for breach of contract, negligent performance of professional services, intentional interference with prospective business advantage and conversion. Defendant then filed a counterclaim against both plaintiff and Kirk Pendleton, the Chief Executive Officer of plaintiff, alleging claims of fraudulent misrepresentation, negligent misrepresentation, libel and slander and breach of contract. Defendant now seeks summary judgment against plaintiff on all counts of plaintiff's complaint. Additionally, plaintiff and Kirk Pendleton now seek partial summary judgment with respect to all of defendant's counterclaims as well as plaintiff's claims of breach of contract and conversion.

### Facts

The pertinent facts to this case are as follows. Plaintiff is a Pennsylvania corporation engaged in the funding and development of drug called Flausterone, which may have

certain applications for the treatment of diabetes, cancer, cholesterol and certain skin diseases such as psoriasis. Plaintiff was granted a license to develop the drug and bring it to market pursuant to a licensing agreement between it and Research Corporation Technologies (referred to as "RCT"). One of the terms of the licensing agreement called for plaintiff to submit a regulatory document known as an Investigational New Drug application (referred to as "IND") to the United States Food and Drug Administration ("FDA") on or before April 15, 1993. The IND was the first of many steps required for marketing the drug, and if approved by the FDA, it would allow plaintiff to begin testing the drug on human beings in order to further develop it.

On or about June 4, 1992, defendant and plaintiff entered into a consulting agreement whereby defendant was hired to aid in the preparation and filing of the IND.[1] During the course of defendant's employment, he submitted several proposed time and event schedules indicating what work was to be completed and when he estimated the work would be done. Included in these schedules were the dates defendant estimated the IND would be filed by. For instance, one such schedule indicated the IND would be filed in December 1992, another revised schedule indicated it would be filed in March 1993. It appears that in March 1993, plaintiff requested that defendant attend a meeting and bring all his files containing his work on the IND with him. Plaintiff alleges that this meeting was prompted by defendant's latest revised schedule which predicted that the IND would not be filed until August or September 1993. Defendant refused to attend the meeting and to turn over his files to plaintiff. Thereafter, on April 2, 1993, plaintiff terminated defendant. Additionally, the IND was not filed by the April 15 deadline.

## Standard

In considering a motion for summary judgment, the court must consider whether the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact, and whether the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c). The court is required to determine whether the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In making this determination, all reasonable inferences must be drawn in favor of the nonmoving party. *Anderson,* 477 U.S. at 256, 106 S.Ct. at 2512. While the movant bears the initial burden of demonstrating an absence of genuine issues of material fact, the nonmovant must then establish the existence of each element of its case. *J.F. Feeser, Inc., v. Serv–A–Portion, Inc.,* 909 F.2d 1524, 1531 (3rd Cir.1990), *cert. denied,* 499 U.S. 921, 111 S.Ct. 1313, 113 L.Ed.2d 246 (1991) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986)).

In cases where the parties have filed cross-motions for summary judgment, each side essentially contends that no issue of material fact exists from its perspective. *United States v. Hall,* 730 F.Supp. 646, 648 (M.D.Pa. 1990). The court must, therefore, consider each motion for summary judgment separately. *Id.* Nor do the standards under which the court grants or denies summary judgment change because cross-motions are filed. *Id.* Each party still bears the initial burden of establishing a lack of genuine issue of material fact. *Id.* Such contradictory claims do not necessarily guarantee that if one party's motion is rejected, the other party's motion must be granted. *See id.* (quoting *Rains v. Cascade Indus., Inc.,* 402 F.2d 241, 245 (3d Cir.1968)).

## Discussion

For purposes of ease, we will approach the discussion of the motions by the various claims alleged by the parties.

---

**1.** Apparently, defendant was actually in charge of gathering and conducting various studies, hiring subcontractors for further research and then putting everything together in the written form of the IND application.

*I.  Breach of contract*

*A.  Plaintiff's claim for breach of contract*

Plaintiff has sued defendant for breach of contract alleging that defendant failed to abide by the terms of the consultancy agreement by failing to perform his obligations thereunder.  In its complaint, plaintiff states "Defendant entered into a certain contract dated June 4, 1992 with [plaintiff] as evidenced by Exhibit 'A'."  Complaint, para. 33.  Exhibit A is a letter dated June 4, 1992 from Mr. Pendleton to defendant and reads as follows:

> By this letter I confirm the Fort Washington Resources, Inc. (FWR) offer for you to consult for a six-month period of time in the area of IND preparation and filing.  Your compensation for this work will be $50,000 payable monthly in six equal payments of $8,333.33.  In addition you will be reimbursed for all approved out-of-pocket expenses.

> Should the IND filing be successful and we mutually agree to continue a relationship, it is our intent to offer you a position as an employee of FWR on terms and conditions satisfactory to both parties.  One of these conditions would be your participation in a stock option program which will be presented for approval in the future.

> Attached is a sheet given to me showing your participation in the shares credited to Temple University.  Although the number of shares is not correct, as we have split the stock, I believe your percentage of the Temple shares is.  I will however confirm this.

Both plaintiff and defendant seek summary judgment on plaintiff's breach of contract claim.  Defendant argues that summary judgment should be granted because as evidenced by the June 4 letter, there was no obligation imposed on defendant to have the IND filed by April 15, 1993, and therefore, plaintiff cannot establish any breach.  Defendant essentially argues that the June 4 letter constitutes the contract between the parties, and because it is unambiguous, the Court must enforce the terms as they are written.  Defendant further argues that there has been no damage by any alleged breach.  Finally, defendant argues that summary judgment is warranted because it is undisputed that plaintiff made it impossible for defendant to perform his duties because it failed to adequately fund the project.

On the other hand, plaintiff argues that it is entitled to summary judgment on its breach of contract claim.  Plaintiff argues that it has established the essential elements of its claim; that a contract existed between the parties, that plaintiff paid defendant for his services, but that defendant failed to provide the product plaintiff contracted for—the IND application.  In so stating, plaintiff argues that the contract consists not only of the June 4 letter, but that it is also evidenced by a letter from defendant dated March 1991, oral discussions between Mr. Pendleton and defendant, and defendant's time and event schedules.  Plaintiff argues that defendant had many contractual duties as is evidenced from the contract and they were not performed by defendant as is established by his own testimony.  Plaintiff further argues that the contract does not contain a term regarding its obligation to fund the project, and therefore defendant's defense of impossibility is without merit.  Plaintiff also contends that at all times there was sufficient money to complete the IND filing.

▮▮▮ Where the written agreement purports to be the entire agreement between the parties, and the terms are unambiguous, then it must be enforced as written by the parties.  *Steuart v. McChesney*, 498 Pa. 45, 48–49, 444 A.2d 659, 661 (1982).  However, determining whether a written agreement is the entire agreement between the parties is a question of law for the court.  *Seidman v. American Express Co.*, 523 F.Supp. 1107, 1109 (E.D.Pa. 1981).  Where it is shown that no single writing embodies the entire agreement between the parties, courts allow the introduction of parol evidence to add to the written agreement.  *Id.*  Likewise, it is for the factfinder to determine the contents of mixed oral and written contracts, or oral contracts alone, when there is conflicting evidence.  *McCormack v. Jermyn*, 351 Pa. 161, 164–65, 40 A.2d 477, 479 (1945) (it is job of jury to determine terms of disputed oral contract and understanding of parties regarding those

terms); *Peugeot Motors v. Stout*, 310 Pa.Super. 412, 456 A.2d 1002, 1005 (1983).

■ It is clear that neither party is entitled to summary judgment on plaintiff's breach of contract claim because the record is rife with issues of material fact which must be determined by the factfinder. In this case, there is obviously a dispute over what constitutes the agreement itself. First, both parties contradict themselves as to whether or not the confirmation letter constitutes the contract between the parties. While defendant argues for purposes of the motion that it does, he states in his answer, deposition testimony and answers to interrogatories that the parties did not enter into a written agreement, and that the agreement was oral and based upon promises made during negotiations and during his employ at plaintiff. *See* defendant's answers to first set of interrogatories, nos. 1 and 3, defendant's deposition pp. 201–02, defendant's answer to complaint §§ 9, 33. Likewise, plaintiff argues that the contract consists of both oral promises and the confirmation letter for purposes of the motion, however, it appears to suggest that the confirmation letter alone constitutes the entire contract in both the complaint and the answer to defendant's counterclaim. For instance, in response to defendant's seventh affirmative defense that the contract was not reduced to writing and violates the statute of frauds, plaintiff states that the terms of the contract are adequately evidenced by the confirmation letter. *See also* complaint, §§ 9, 33.

Second, a thorough reading of the confirmation letter suggests that it does not embody the entire agreement between the parties. The language of the letter does not state that it is a contract, rather, it states that plaintiff is confirming its offer to defendant. Further, the letter merely indicates what some of the terms of the offer are. However, the letter does not clarify what defendant's exact duties are, thus suggesting that at least part of the employment contract was oral or else embodied in another document.

Judging from the above, the confirmation letter cannot consist of the entire agreement between the parties. However, both parties admit that a contract exists, and that it was based in part, on oral promises. What the terms of that oral contract were is a question of fact for the factfinder. Furthermore, the parties dispute that defendant was obligated to file the IND by the April 15 deadline. As such, it is for the factfinder to determine whether this was a term of the contract. For these reasons, defendant's argument that he is entitled to summary judgment on plaintiff's breach of contract claim because the contract is clear and unambiguous fails.

Likewise, plaintiff's argument that it is entitled to summary judgment on its breach of contract claim also fails. Plaintiff states that defendant failed to abide by the terms of the contract and failed to provide it with the completed IND application. In making its argument, plaintiff refers to the schedules submitted by defendant and notes that many of the events that defendant refers to in those schedules were not performed, and as such, he breached the contract. Defendant disputes that he did not comply with the agreement, and while he admits in his deposition that many of the steps were not performed, he also provides evidence that some of the steps were. However, given that there is an issue as to what the terms of the contract were, it becomes an issue for the factfinder as to whether defendant was bound to follow the steps in his schedules as conditions of his contract, and whether he was obligated to provide a completed IND application to plaintiff. Indeed, the confirmation letter only states that defendant is being hired to consult in the area of IND preparation and filing. Because we hold that the letter does not embody the entire agreement, it is up to the factfinder to determine what defendant's duties and obligations were, and whether he breached them by not submitting a completed IND and not following his time and event schedules.

Defendant's other two arguments in support of his motion for summary judgment also fail. First, defendant claims plaintiff has not been damaged by his alleged breach. However, plaintiff disputes this and provides evidence that it was damaged by paying defendant over $86,000, by paying other persons, by incurring delay costs associated with

the development of the drug, costs with filing the IND and costs associated with replacement of defendant's services and yet never receiving the IND. In finding that an issue of fact exists, we need only reach defendant's claim that he earned the salary paid to him and therefore, plaintiff was not damaged. As it is disputed whether or not defendant complied with the terms of his employment contract, obviously, it becomes disputed whether or not defendant actually earned the $86,000. As such, defendant's argument fails.

Finally defendant claims that it is undisputed that plaintiff made it impossible for him to perform due to lack of funding of the project. Defendant presents voluminous evidence through his deposition, and the depositions of Abe Bavley and Arthur Schwartz, two scientists affiliated with the development of the drug, to show that Kirk Pendleton repeatedly delayed payments, suggested cost-cutting measures in conjunction with the filing of the IND, and that plaintiff ran into financial difficulties in the beginning of 1993. However, plaintiff presents evidence which shows that at all times it had the funds available (approximately between $200,000 and $500,000) in order to fund the project. As such, it becomes a question of fact as to whether defendant's defense of impossibility has any merit.

Thus, for all the above reasons, neither party is entitled to summary judgment of plaintiff's breach of contract claim.

### B. Defendant's counterclaim for breach of contract

■ Defendant has filed a counterclaim against Mr. Pendleton and plaintiff alleging that they breached the consultancy agreement in the following manner: 1) they failed to reimburse defendant for expenses incurred, 2) they failed to adequately fund the IND, 3) they failed to retain defendant through the completion of the IND process, and 4) they failed to hire defendant as an employee of plaintiff.

Plaintiff and Kirk Pendleton now make several arguments to support their claim that they are entitled to summary judgment on defendant's breach of contract counterclaim. They first argue that they had the right to refuse to approve defendant's expenses pursuant to the terms of the contract, therefore, there is no breach of contract. Second, they argue that there is no evidence that adequate funding was a condition of the contract, and even if it was, there is no evidence that there were not adequate funds. Third, they argue that even if funding was a term of the contract, there is no evidence that defendant was damaged by any alleged breach because there was no guarantee to defendant of future employment after the six month period. Finally, they argue that there can be no cause of action against Mr. Pendleton because he was acting as an employee of the corporation, and as such, cannot be personally liable for the contract.

While defendant refutes all of these arguments, we only need to reach the argument surrounding the expenses because we find an issue of fact exists. Defendant provides an affidavit stating that all of his expenses were pre-approved, and that plaintiff's failure to pay his last phone bill constitutes a breach of the contract. As stated previously, the confirmation letter states that all approved expenses would be paid. Further, plaintiff provides an affidavit stating that defendant's final telephone bill was not approved. Thus, while it is undisputed that plaintiff failed to pay defendant's last phone bill, it is disputed as to whether that bill was pre-approved. As such, we must deny plaintiff's motion for summary judgment because there exists a dispute about the expenses. However, because Kirk Pendleton faces liability separate from plaintiff, we still need to consider the argument pertaining to him.

Defendant argues that he can state a claim against Mr. Pendleton for breach of contract because Mr. Pendleton was acting in his individual capacity and not as an employee of plaintiff, and as such, this Court should pierce the corporate veil so as to impose liability on Mr. Pendleton. Although defendant asserts that he has filed a motion to amend his counterclaims to add a claim for piercing the corporate veil, we recently denied that motion on the ground that defendant's claim failed to state a claim for which relief could be granted and therefore was meritless. *See Fort Washington Resources,*

*Inc. v. Tannen,* No. 93–CV–2415, 1994 WL 57077 (E.D.Pa. Feb. 23, 1994).

In the absence of a claim that the corporate veil should be pierced, a corporate officer cannot be held individually liable for breaches of contract by the corporation. *Pell v. Weinstein,* 759 F.Supp. 1107, 1115–16 (M.D.Pa.1991), *aff'd,* 961 F.2d 1568 (3rd Cir. 1992). This is because the corporate officer is acting within his scope of authority and on behalf of the corporation when he enters into the contract, thus, the contract itself is between the party and the "legal entity of the artificial being created by the charter." *Id.* 759 F.Supp. at 1115–16 (quoting *Bala Corp. v. McGlinn,* 295 Pa. 74, 79, 144 A. 823, 824 (1929)); *Daniel Adams Assoc. v. Rimbach Publishing, Inc.,* 360 Pa.Super. 72, 79–80, 519 A.2d 997, 1000–01 (1987), *allocatur denied,* 517 Pa. 597, 535 A.2d 1056 (1987). Given that we have already found defendant's claim for piercing the corporate veil to be without merit, there can be no breach of contract claim against Mr. Pendleton for personal liability. *See Pell,* 759 F.Supp. at 1116 (holding that breach of contract claim against corporate officer was subject to dismissal because there were no allegations of piercing the corporate veil). As such, Mr. Pendleton is entitled to summary judgment on the breach of contract claim against him.

*C. Plaintiff's claim for conversion*

Plaintiff has filed a claim against defendant for conversion, alleging that "Defendant was responsible for preparing, compiling and contracting for the preparation of certain documentation necessary to the IND filing" and that although plaintiff repeatedly requested that defendant turn over the documentation to plaintiff, defendant has refused to do so. Complaint, §§ 49–51.

Both plaintiff and defendant now seek summary judgment on the conversion claim. Defendant argues that he is entitled to summary judgment because plaintiff has failed to establish the essential elements for conversion. Defendant claims that there is no proof that plaintiff was the owner of the documentation; rather, the documentation belonged to Dr. Schwartz who is a co-inventor of the drug and an employee of Temple University, and the various sub-contractors whom defendant contracted with for work on the IND. Defendant also argues that because plaintiff did not attempt to obtain the documentation from the subcontractors, he was not under any obligation to provide the documentation to plaintiff. He also argues that there is no proof that he exercised exclusive dominion and control over this material. Finally, he asserts that he has now relinquished all of the documentation but the letters and correspondence from the various subcontractors. Plaintiff, on the other hand, asserts it has proven the elements of conversion, and as such, is entitled to summary judgment. For the following reasons, we agree with plaintiff.

Conversion is an act by which another deprives one of his right of property in, or possession of, or use of a chattel, without lawful justification and without the owner's consent. *Norriton East Realty Corp. v. Central–Penn Nat'l Bank,* 435 Pa. 57, 60, 254 A.2d 637, 638 (1969); *Eisenhauer v. Clock Towers Assoc.,* 399 Pa.Super. 238, 582 A.2d 33, 36 (1990) (citations omitted). There are several ways in which conversion can be committed: 1) acquiring possession of the chattel with the intent to assert a right to it which is adverse to the owner; 2) transferring the chattel and thereby depriving the owner of control; 3) unreasonably withholding possession of the chattel from one who has the right to it; and 4) misusing or seriously damaging the chattel in defiance of the owner's rights. *Norriton,* 435 Pa. 57, 60, 254 A.2d 637, 638 (1969) (quoting Prosser, *Torts* § 15 (2d ed. 1955)). Where one lawfully comes into possession of the chattel, a conversion occurs if a demand for the chattel is made by the rightful owner and the other party refuses to deliver. *Norriton,* 435 Pa. at 61, 254 A.2d at 639. Additionally, defendant need not have a conscious intent of wrongdoing to be liable for conversion, as long as he has exercised wrongful control over the goods. *Id.* at 60, 254 A.2d at 638. Finally, the person alleging conversion need not be the actual owner of the chattel as long as he was entitled to be in possession or was in possession of the chattel at the time of the

conversion. *Eisenhauer*, 399 Pa.Super. 238, 582 A.2d at 36.

From the evidence, it is clear that the elements of conversion have been met, and that there is no genuine issue of material fact. Plaintiff submits a memo from Kirk Pendleton to defendant dated March 22, 1993 where Kirk Pendleton requests defendant to bring his entire "FWR file including your work to date on the IND" to a meeting the following day. It is undisputed that defendant failed to attend the meeting, and that he failed to turn over his files. Deposition of defendant, pp. 83–4, 97. Defendant asserts in his deposition and an affidavit that he was prohibited by Dr. Schwartz to turn over the files when the request was first made. He also provides a letter from Dr. Schwartz which affirms this. Defendant further states in a letter to plaintiff dated April 16, 1993, where he confirms his termination, that plaintiff had no legal right to his files. Defendant testified that he was advised of this by his legal counsel at the time. However, there is also a letter dated May 28, 1993 in which Dr. Schwartz retracts his original prohibition stating that he and Temple University have no objection to defendant turning over the files. Both defendant and plaintiff also provide affidavits stating that defendant eventually turned over the files pertaining to Dr. Schwartz, but that defendant has not turned over the files pertaining to the subcontractors.

Thus, the facts in this case are undisputed. Defendant failed to turn over his files when originally requested, he has now turned over a portion of the files, however, he has retained another portion of the files pertaining to the subcontractors. It is clear that defendant has unlawfully exerted control over the files and in so doing, has deprived plaintiff of the use of the files.

Defendant's reasons for retaining the files are of no matter. First, the tort of conversion is a strict liability offense. *Unit-*

ed States v. New Holland Sales Stables, 619 F.Supp. 1162, 1165 (E.D.Pa.1985). Second, it does not matter that plaintiff could have obtained the various documents from each of the subcontractors. Defendant admits in his deposition that he contracted with the subcontractors on plaintiff's behalf and that he was employed by plaintiff as a consultant. Defendant's deposition, pp. 81–83, 98. As such, the files prepared by defendant in his scope of employment were the property of plaintiff, and defendant had no property right in them. *See Parents Against Abuse v. Williamsport*, 140 Pa.Cmwlth. 559, 594 A.2d 796, 804 (1991) (school had right to contract that files containing work product of its employee, a school psychologist, would be turned over to parents of children he interviewed, and that employee had no property right in his files). Third, even though defendant has now relinquished some of his files, that is not a defense to conversion.[2] *See* Prosser & Keeton, *Torts* § 15, at 106 (5th ed. 1984). As such, the undisputed facts clearly show that defendant is liable for conversion, and that plaintiff is entitled to summary judgment in its favor on Count IV of its complaint.

### D. Negligent performance of professional services

Plaintiff has also asserted a claim of negligent performance of professional services against defendant for failing to do the following: adequately perform his duties, keep plaintiff advised of his activities, provide plaintiff with his work product and advise plaintiff that he could not meet the required deadlines for the IND. Defendant now seeks summary judgment on this claim on the basis that it is undisputed that defendant exercised reasonable care in the performance of the duties for which he contracted.

A professional is bound to use reasonable care in the exercise of his professional duties for which he contracts. *Bloomsburg Mill, Inc. v. Sordoni Constr.*

---

**2.** Nor does it matter that defendant may have originally thought the files were not the property of plaintiff. Defendant was given permission to relinquish the files of Dr. Schwartz sometime in May, and it appears that defendant did not give that part of the files to plaintiff until several months later. Thus, even while his actions may have been excusable at first, his acts of delay and ultimately retaining the portion of the files regarding the sub-contractors constitute a wrongful withholding of plaintiff's property.

*Co., Inc.,* 401 Pa. 358, 164 A.2d 201 (1960); *Robert Wooler Co. v. Fidelity Bank,* 330 Pa.Super. 523, 531, 479 A.2d 1027, 1031 (1984). As with the claims for breach of contract, it is disputed that defendant exercised his duties with reasonable care. Defendant presents evidence that both Abe Bavley and Arthur Schwartz testified that defendant performed his duties as he was supposed to, *see* deposition of Abe Bavley, p. 49, and that he did a very good job and was hard working, *see* deposition of Arthur Schwartz, p. 32. Plaintiff, however, presents a report of its expert witness, Hanni Ellis, who replaced defendant after he was fired, stating that defendant did not have an understanding of how to prepare an IND, nor the knowledge or experience to prepare an IND. She further states that "he did not begin even the most rudimentary tasks needed to prepare an IND." *See* report of Hanni Ellis. Defendant also submits an affidavit which refutes the opinions contained in Ms. Ellis' report.

Moreover, because it is disputed as to what defendant's exact duties were, and what deadlines he was supposed to meet, clearly there are questions of fact as to whether defendant performed these duties with reasonable care. As such, defendant's motion for summary judgment on the negligent performance claim is without merit.

*E. Intentional interference with prospective business advantage*

█ Plaintiff has also stated a claim against defendant for intentional interference with prospective business advantage on the basis that defendant knew plaintiff had a license with RCT regarding the drug, and that defendant's actions in failing to timely perform his obligations and intentionally misleading plaintiff about the IND schedule were deliberately done so as to disrupt and harm plaintiff's relationship with RCT. Defendant now seeks summary judgment on the basis that plaintiff's relationship with RCT has not been damaged, and there is no evi-

dence that defendant intentionally misled plaintiff about the IND schedule.

█ In order to establish a claim for intentional interference with prospective business advantage, the following elements must be shown. First, there must be a prospective contractual relationship. Second, there must be an intent to harm plaintiff by preventing the relationship from occurring. Third, there can be no privilege or justification by defendant. Finally, there must be actual damage from defendant's conduct. *Zions First Nat'l Bank v. United Health Club,* 704 F.2d 120, 125 (3rd Cir.1983) (citing Restatement of Torts (Second) § 766B (1979)); *Vintage Homes, Inc. v. Levin,* 382 Pa.Super. 146, 554 A.2d 989, 994 (1989), *allocatur denied,* 524 Pa. 622, 571 A.2d 384 (1989) (citations omitted).

We agree that there is no evidence to support plaintiff's claim, and therefore, hold that defendant is entitled to summary judgment on this claim. The undisputed evidence shows that Kirk Pendleton admitted in his deposition that RCT gave plaintiff two extension dates in which to file the IND. The first date was April 15, 1993. The second date was January 1, 1994. Mr. Pendleton states that the second extension was granted because the IND was not ready to be filed by April 15, 1993. Deposition of Kirk Pendleton, pp. 38, 41–42. Further, although there were problems because plaintiff allegedly did not pay Temple University some royalty payments which were due under the licensing agreement between RCT and plaintiff, Mr. Pendleton admits that RCT never threatened to terminate the licensing agreement as a result, and eventually the problem was resolved and all the parties were happy. *Id.* at 100–105.

Based on the above, there is no evidence that any prospective relationship with RCT was damaged.[3] Even viewing the evidence in a light most favorable to plaintiff, and assuming that defendant was the reason why

---

3. We question the applicability of plaintiff's cause of action because it had already entered into a contractual relationship with RCT. As previously stated, it must be shown that there is a prospective contractual relationship. However, defendant has failed to raise this point in his

motion, and given our holding, the argument is moot anyhow. Nonetheless, for purposes of this motion, we are assuming that plaintiff was referring to prospective future relationships with RCT, although it is not so stated in the complaint.

the IND was not filed on time, plaintiff has failed to provide any evidence of damage. Rather, the evidence indicates that plaintiff's relationship with RCT has not been threatened in any manner, especially because RCT granted plaintiff another extension even after it missed the first deadline.

Plaintiff attempts to defeat defendant's motion by stating that its complaint is not limited to its relationship with RCT but with various contractors in the field with whom its prospective relationships may have been damaged as a result of defendant's actions. It further argues that it intends to introduce evidence that its reputation and ability to obtain additional work from these contractors have been damaged at trial.

■ These arguments are insufficient to avoid a motion for summary judgment however. First, nowhere in plaintiff's complaint is it stated that plaintiff's future relationships with outside contractors were affected by defendant's actions. The complaint clearly states that plaintiff "believes and therefore avers that Defendant's actions were taken with deliberate intent to disrupt and harm [plaintiff's] relationship with RCT" and that defendant's conduct "[has] adversely affected [plaintiff's] relationship with its licensor, RCT." Complaint, §§ 44, 45. Plaintiff cannot now expand its claim beyond its pleadings simply to avoid a motion for summary judgment. *See Ige v. City of Philadelphia School District,* 647 F.Supp. 641, 644 (E.D.Pa.1986) (court will not review allegations of § 1983 claim in response to a motion for summary judgment where such claim was never plead in the complaint). Further, as previously stated, defendant presents undisputed evidence regarding the lack of damage. Plaintiff's claim that it intends to show evidence of such damage at trial does not survive a motion for summary judgment. *See* Fed.R.Civ.P. 56(e). As such, summary judgment on Count III of plaintiff's complaint is granted in defendant's favor.

*F. Defendant's claim of libel and slander*

■ Defendant alleges claims of libel and slander against plaintiff and Kirk Pendleton, stating that they have published and communicated to others that defendant wrongfully converted plaintiff's property to his own use, and that the IND was not filed because of defendant's professional inaptitude. Both plaintiff and Kirk Pendleton now seek summary judgment on the basis that defendant has failed to identify any specific statement allegedly made by them in order to show defamation. Second, they argue that any allegations of incompetence and that defendant committed conversion are covered by a qualified business privilege. Finally, they argue that the alleged statement regarding conversion is an opinion and therefore not defamatory.

On the contrary, defendant asserts that he has sufficiently identified the defamatory statements. He also asserts that there is no business privilege in this situation because the statements were communicated to other persons than those merely affiliated with the project. He further argues that the statements were not true and were maliciously made. Finally, he states that the statement that one is a thief is actionable per se.

■ A defamatory statement under Pennsylvania law is one that tends to harm another's reputation by lowering him in the eyes of the community or by deterring third persons from dealing or associating with him. *U.S. Healthcare v. Blue Cross,* 898 F.2d 914, 923 (3rd Cir.1990), *cert. denied,* 498 U.S. 816, 111 S.Ct. 58, 112 L.Ed.2d 33 (1990) (citations omitted). Whether or not a statement has defamatory meaning is a preliminary question for the court. *Id.; Burns v. Supermarkets Gen. Corp.,* 615 F.Supp. 154, 157 (E.D.Pa.1985). If the statement is capable of defamatory meaning, then it is for the jury to decide whether the reader or listener understood it to be defamatory. *U.S. Healthcare,* 898 F.2d at 923; *Burns,* 615 F.Supp. at 157. However, the defendant can defend against allegations of defamation by proving the truth of the statement, or by asserting that the statement was privileged. *Id.* Whether or not the privilege applies is a question of law. *Krochalis v. Insurance Co.,* 629 F.Supp. 1360, 1367 (E.D.Pa.1985); *Medico v. Time, Inc.,* 509 F.Supp. 268, 272 (E.D.Pa. 1980), *cert. denied,* 454 U.S. 836, 102 S.Ct. 139, 70 L.Ed.2d 116 (1981). Once defendant raises the defense of privilege, it is for the

plaintiff to show that the privilege has been abused. *U.S. Healthcare*, 898 F.2d at 923. Whether or not the privilege has been abused is a question of fact for the jury. *Krochalis*, 629 F.Supp. at 1367.

■ Additionally, an opinion can be defamatory if there are certain undisclosed facts justifying the opinion that are understood to be defamatory. *Habe v. Fort Cherry School Dist.*, 786 F.Supp. 1216, 1219 (W.D.Pa.1992). As was explained by the Third Circuit:

> Although there may be no such thing as a false opinion, an opinion which is unfounded reveals its lack of merit when the opinion-holder discloses the factual basis for the idea. If the disclosed facts are true and the opinion is defamatory, a listener may choose to accept or reject it on the basis of an independent evaluation of the facts. However, if an opinion is stated in a manner that implies that it draws upon unstated facts for its basis, the listener is unable to make an evaluation of the soundness of the opinion. In such circumstances, if the underlying facts are false, the Constitution does not protect the opinion.

*Burns v. Supermarkets Gen. Corp.*, 615 F.Supp. 154, 158 (E.D.Pa.1985) (quoting *Redco Corp. v. CBS, Inc.*, 758 F.2d 970, 972 (3rd Cir.1985), *cert. denied*, 474 U.S. 843, 106 S.Ct. 131, 88 L.Ed.2d 107 (1985)).

■ In the present case, Abe Bavley testified that at one point, Kirk Pendleton made a statement to him and Dr. Schwartz which implied that defendant had not performed on the project as he thought would be proper under the circumstances. Deposition of Abe Bavley, pp. 113–14. Defendant also testified that Kirk Pendleton told various people including certain contractors, and parties at RCT and Temple University that he was incompetent in his performance and that he took documents for his own use. Defendant's deposition, pp. 204–07. He also claims that someone from plaintiff made the same statements to a reporter from the Philadel-

phia Business Journal, which featured an article about this lawsuit. *Id.* at 204–05. There is also a letter from Kirk Pendleton to both Dr. Schwartz and Dr. Bavley stating that defendant was terminated because of failing to attend a critical meeting and for "what may amount to theft of [plaintiff's] critical documents." Both Dr. Schwartz and Dr. Bavley then submit affidavits which state the letter is the basis for their claims that Kirk Pendleton stated defendant was incompetent, and that defendant stole documents. Another affidavit submitted by Marvin Lewbart, a contractor with whom defendant dealt, also states that Kirk Pendleton informed him why plaintiff was having problems getting the IND filed and that defendant's name was used in connection with these difficulties. He further states that Kirk Pendleton told him that defendant had retained plaintiff's documents. In an affidavit from Kirk Pendleton, he admits to advising shareholders that defendant was terminated for failing to meet his deadlines. However, he denies that anyone from plaintiff ever spoke to a reporter from the Philadelphia Business Journal. Finally, in defendant's answers to interrogatories he states that Kirk Pendleton defamed him by stating in conversations to six persons that he converted plaintiff's property to his own use.

■ From the evidence, it is clear that we are dealing with two alleged defamatory statements, 1) that defendant was incompetent and 2) that defendant converted documents. We need not deal with the statement concerning the conversion of the documents, however, because we have found that plaintiff is entitled to summary judgment on this claim, and as such, truth is an absolute defense to such statements. *See Krochalis v. Insurance Co.*, 629 F.Supp. 1360, 1367 (E.D.Pa.1985). However, the issue remains as to whether plaintiff and Kirk Pendleton defamed defendant by stating to others that he was incompetent, or some statement that had the implication that he was incompetent.[4]

---

4. Although we don't have the exact statements made by plaintiff, and to whom they were made, it is undisputed that Kirk Pendleton at least told the shareholders and Drs. Schwartz and Bavley

that defendant was fired for not adequately performing (or words to that effect). For this reason, we reject plaintiff and Kirk Pendleton's ar-

We must first determine whether the statements at issue have any defamatory meaning. Given the definition of defamatory meaning, we hold that the alleged statements could be defamatory if others were told that defendant was performing incompetently when in fact he was not. If in fact defendant was actually performing well, (as Abe Bavley and Arthur Schwartz both testify) but others in the field were told that defendant was not performing well, then it is possible that defendant's reputation in this field and his chances for another job could also be damaged. *See e.g. Frymire v. Painewebber, Inc.,* 87 B.R. 856, 860 (Bankr.E.D.Pa.1988) (holding that employer's statements that employee did not produce satisfactorily on the job could be construed as being defamatory).[5]

■ However, plaintiff and Kirk Pendleton have raised the defense of business privilege, and it is clear that when an employer makes remarks to its employees with respect to matters of common concern relative to the operation of the business, then those remarks are covered by a qualified privilege. *Krochalis v. Insurance Co.,* 629 F.Supp. 1360, 1367 (E.D.Pa.1985). *See also Burns,* 615 F.Supp. at 158 (stating conditional privilege attached where "some interest of the person to whom the matter is published or some other third person is involved."). If, in fact, Kirk Pendleton told persons affiliated with the project why defendant was terminated, then that would be covered by this privilege.

In the present case, however, defendant alleges that Kirk Pendleton abused his privilege by excessive publication of the statement, in other words, stating the remark to others who were outside the privilege. Indeed, defendant states in his deposition that the remark was made to Gary Munsinger (an employee at RCT), Hanni Ellis, Antonio Gonzales (a representative at Temple University), as well as an attorney at Temple University. Further, Kirk Pendleton admits to making remarks to various shareholders. Whether these persons were within the privilege is a question for the factfinder. *See Krochalis,* 629 F.Supp. at 1367 (summary judgment denied because it was a jury question as to whether certain employees who heard the remark came within the realm of the privilege).[6] As such, plaintiff's motion for summary judgment on the libel and slander claim fails.

### G. Fraudulent and negligent misrepresentation

■ Plaintiff and Kirk Pendleton seek summary judgment on defendant's claims of fraudulent and negligent misrepresentation. However, during the pendency of this motion, we granted defendant leave to amend his counterclaims in order to add a paragraph to both of these claims. The paragraph essentially alleges an additional misrepresentation by plaintiff and Kirk Pendleton. As a result, this part of plaintiff and Kirk Pendleton's motion has been rendered moot and therefore, their motion shall be denied. However, we note that this decision does not preclude them from filing an additional dispositive motion with respect to these two claims once defendant has filed the amended counterclaim, should they feel it is warranted.

### Conclusion

In sum, there exists genuine issues of material fact as to whether there has been a breach of contract by both parties, and as such, both plaintiff's and defendant's motions are denied with respect to those claims. However, because Kirk Pendleton cannot be

gument that defendant's claim fails for lack of specificity.

5. Additionally, we note that while plaintiff has not raised the claim that this particular statement was an opinion, it would still be actionable assuming there were undisclosed facts surrounding the statement.

6. In considering the issue of excessive publication, we do not consider defendant's allegation regarding the reporter from the Philadelphia Business Journal because defendant has not presented any evidence to support his claim. Plaintiff provides an affidavit stating that nobody from plaintiff spoke to a reporter, and this evidence is unrefuted. Simply because the article exists is not sufficient evidence to support defendant's claim. Nonetheless, there still exists an issue of material fact with respect to the other persons spoken to.

held personally liable for a breach of contract by the corporation, he is entitled to summary judgment on defendant's claim. There are also genuine issues with respect to the claims for negligent performance of professional services and libel and slander.

With regard to plaintiff's claim for conversion, there is no genuine issue of material fact, and summary judgment is granted in its favor. Likewise, there is no genuine issue with respect to plaintiff's claim for intentional interference with prospective business advantage, and summary judgment is entered in defendant's favor. Finally, the claims of summary judgment by plaintiff and Kirk Pendleton with regard to the negligent and fraudulent misrepresentation claims are denied as moot. An appropriate Order follows.

## ORDER

AND NOW, this 9th day of March, 1994, upon consideration of the cross-motions of the parties for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, and all responses thereto, it is hereby ORDERED:

1) that defendant's motion for summary judgment is GRANTED IN PART with respect to Count III of plaintiff's complaint (intentional interference with prospective business advantage); and

2) that defendant's motion for summary judgment is DENIED IN PART with respect to all other counts of the complaint;

3) that plaintiff and Kirk Pendleton's motion for summary judgment is GRANTED IN PART with respect to Count IV (conversion) of the complaint; and

4) that Kirk Pendleton's motion for summary judgment is GRANTED IN PART with respect to Count IV of defendant's counterclaim (breach of contract);

5) that plaintiff and Kirk Pendleton's motion for summary judgment is DENIED AS MOOT with respect to Counts I and II of defendant's counterclaim (fraudulent and negligent misrepresentation); and

6) that plaintiff and Kirk Pendleton's motion for summary judgment is DENIED IN PART with respect to the other outstanding claims.

7) It is further ORDERED that Kirk Pendleton and plaintiff shall have thirty (30) days from the date that defendant files his amended counterclaim in which to file any dispositive motions pertaining to the claims of negligent and fraudulent misrepresentation.